**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JAMES LUTCHER NEGLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Case No. 03-2126 (GK)** |
| | ) | |
| **FEDERAL BUREAU OF** | ) | |
| **INVESTIGATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

Defendant Federal Bureau of Investigation's (the "FBI") Second Motion for
Summary Judgment ("Def.'s Mot.") does exactly what Plaintiff James Lutcher Negley
("Negley") evinced in his Motion for Partial Summary Judgment ("Pl.'s Mot.") – the FBI
routinely takes the easy path in FOIA lawsuits in the hopes that, as more often than not
happens, it will succeed by doing the bare minimum.  Here, the FBI has filed a second
motion for summary judgment in large part by cutting and pasting from its first motion
for summary judgment and appellate briefs, which completely ignores that this case is
dramatically different than the one in which it moved for summary judgment in early
2004.  Since that time, the D.C. Circuit has remanded this case to this Court, noting that
"the record . . . raises sufficient doubt about the scope of the FBI's search to preclude
summary judgment" – which, unlike as represented by the FBI, was not in any way
limited to File S-1575.  Critically, the FBI has conducted no additional searches to
remedy the infirmities noted by the D.C. Circuit.  Negley, however, was permitted to take
depositions of FBI personnel, which revealed that the FBI's practice of searching its
records in response to FOIA requests is significantly flawed and is not designed to

identify all responsive documents.  Indeed, Negley identified no less than five other

potential sources of responsive documents that the FBI simply chose not to search – four

electronic databases maintained by the FBI and paper records, instead searching only one

database (that does not permit full-text searching).

Rather than address these inadequacies, the FBI moves for summary judgment

regarding the reasonableness of its <u>search</u> on the ground that it properly did not <u>produce</u>

one file (File S-1575, which has been at issue in this case even before the case was

appealed to the D.C. Circuit).  Not only does this not support summary judgment for the

FBI on the issue of the reasonableness of its search but, if anything, it shows that Negley

is correct – the FBI simply does not understand its burden to <u>search</u> for responsive

documents pursuant to a FOIA request.  In addition, and as discussed below, the FBI's

failure to produce File S-1575 (and the full contents of Serials 3041 and 3865)[1] is not

justified; thus, the FBI is not entitled to summary judgment on this issue.

Further, rather than brief the real issues, the FBI devotes significant time to

seeking summary judgment regarding the redactions/withholdings made from the

---

[1] Remarkably, the FBI recently advised Negley of its position that the search for and production of the full contents of Serials 3041 and 3865 constitutes a new FOIA request from Negley.  This, of course, is not supported by either the law or the record in this case – Negley's existing FOIA request contained no limitations regarding the scope of the search to be conducted by the FBI; rather, the FBI unilaterally limited the scope of its search (which, as set forth in Negley's motion for partial summary judgment, fails to comply with FOIA).

Purportedly in an effort to cooperate, the FBI indicated that it would search for and produce responsive documents from these serials without Negley submitting an additional FOIA request.  On October 5, 2007, Negley received additional documents from the FBI.  No declaration or sworn statement attesting to the source of those documents has been provided; nor was a <u>Vaughn</u> index provided for the many redactions to these documents.

documents that it has located and, for the most part, produced to Negley (from Serial 3041). This is nothing but a smokescreen intended to divert the Court's attention – Negley is not challenging the propriety of the redactions of the few documents actually searched for, located and produced by the FBI. In other words, this Court need not spend time or resources (as the FBI presumably wants it to do) on determining the propriety of the redactions/withholdings from Serial 3041.

As set forth below (and for the reasons set forth in Negley's summary judgment brief (Doc. #71)), Negley requests that this Court deny the FBI's motion and enter partial summary judgment for Negley against the FBI.

**I.     The FBI is not Entitled to Summary Judgment Because it Failed to Conduct a Reasonable Search for Responsive Documents Under FOIA.**

Although the FBI seeks summary judgment that its search in response to Negley's FOIA request was reasonable, its brief contains nothing to support the adequacy of the <u>search</u> conducted by the FBI. Rather, the FBI focuses on why it did not <u>produce</u> File S-1575. <u>See</u> Def.'s Mot. at 10-11. The FBI either is confused or is attempting to mis-direct the Court by juxtaposing its obligation to conduct a reasonable search for responsive documents with its obligation to produce responsive documents that it locates.[2] Either way, this does not satisfy the FBI's burden to obtain summary judgment regarding the reasonableness of its search.

To establish that its search was adequate, the FBI must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be

---

[2] The FBI's approach in this regard is reminiscent of its focus, earlier in this case, on the documents <u>produced/identified</u> rather than the documents <u>requested</u> in connection with the <u>res judicata</u> analysis, which approach was rejected by the D.C. Circuit.

reasonably expected to produce the information requested." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  An affidavit submitted in support of an agency's search must demonstrate and explain "with reasonable detail[] that the search method . . . was reasonably calculated to uncover all relevant documents." Id.; see Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995) ("The affidavits must be reasonably detailed . . . , setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.") (internal quotation and citation omitted).  In evaluating the supporting affidavit, courts apply a "reasonableness" test, keeping in mind "congressional intent tilting the scale in favor of disclosure." Campbell v. DOJ, 164 F.3d 20, 27 (D.C. Cir. 1998); see also, e.g., McCutchen v. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (noting that the purpose of FOIA is to "facilitate public access to Government documents" and is "meant to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (citation omitted); Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir. 1984) ("The central purpose of FOIA is to 'open[] up the workings of government to public scrutiny' through the disclosure of government records.") (citation omitted); Mack v. Dep't of the Navy, 259 F. Supp. 2d 99, 104 (D.D.C. 2003) (noting that the purpose of FOIA is to "afford[] the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure").

Here, the FBI makes no attempt in its brief to provide factual support for the reasonableness of its search.  The only evidence offered by the FBI and before the Court on this issue are the four declarations submitted by Hardy.  However, as Negley pointed

out in his summary judgment brief, after generally explaining the CRS, Hardy's

declarations only briefly and summarily describe the search conducted in response to

Negley's FOIA Request:

> As plaintiff was advised previously, after repeated CRS indices searches, the SFFO did not identify any main files in which plaintiff is the subject. However, plaintiff is mentioned briefly in a total of 47 pages of documents in file 149A-SF-106204, which relates to the FBI's investigation of the "Unabomber." File 149A-SF-106204 concerns an investigation into the destruction of aircraft or motor vehicle, and the subjects of the file are individuals or organizations other than plaintiff.

See Ex. 3,[3] ¶ 25.[4]

This search is inadequate because as discovery in this case revealed, in response

to Negley's request for all documents about him and File S-1575 (without any limitation

as to which databases the FBI should search), the FBI has searched only the Universal

Index ("UNI"), using Negley's name, for responsive documents[5]:

- No search of the ICM database has been done, see Ex. 8 at 94-96, 99-101, 108;

- No search of the full-text ECF database has been done, see Ex. 6 at 198;

- No search of ELSUR has been done;

---

[3] Citations in this brief to Exhibits 1-9 refer to the exhibits that were attached to Negley's Motion for Partial Summary Judgment (Doc. #71).

[4] As revealed in discovery, however, even this limited statement regarding the FBI's search is incorrect – Negley is "mentioned," not in 47 pages of File No. 149A-SF-106204, but in (at least) 56 pages in Serial 3041, 47 pages in Serial 3865, and, according to ASAC Holly, in File S-1575. See Pl.'s Mot. at 27-32; see also Ex. 6 at 170-71 (Hardy admitting that his declaration was "incomplete" in this regard).

[5] See Ex. 6 at 193 ("We did not conduct an additional search beyond what we've talked about about the UNI search[.]").

- No search of the full-text Zy Database has been done;

- No search of the card system for paper documents has been done, see id. at 25-30;

- No search of/for handwritten notes, including of the case agent's interview of Negley, has been done, see id. at 53;[6]

- No search of/for personal notes/files of any FBI employees has been done, see id. at 65-66;

- No search of restricted documents has been done, see Ex. 8 at 96, 108; and

- The FBI mistakenly assumed, after its initial inadequate search, that Negley sought only documents "about himself in the UNABOM file located in the FBI's San Francisco Field Office" and, therefore, limited all of its subsequent searches to the UNABOM file, see Ex. 4, ¶ 3; Ex. 5, ¶ 3.[7]

---

[6] The FBI makes a passing suggestion that because ASAC Holly testified that he does not always take notes during investigations and does not recall whether he did so when investigating Negley, "there is no reason to believe that notes exist in this case for which the FBI should have searched." See Def.'s Mot. at 11-12 n.9. To the contrary, ASAC Holly testified that although he does not recall one way or the other whether he took notes during his investigation of Negley, his practice of taking notes was not at all "unusual[.]" See Ex. 10 (Excerpts of Deposition Transcript of Clifford C. Holly (March 12, 2007)), at 51. Further, ASAC Holly testified that no one asked him to look for any notes taken during the Negley investigation. See Ex. 7 at 52.

[7] Further evidence of the inadequacy of the search is revealed when comparing the pages that have been produced to date, see Ex. 3-I, with additional FBI documents that Negley possesses (some of which he forwarded to the FBI to direct it to other files), see Ex. 2-C. Notably, some of the documents contained in Exhibit 2-C, which are clearly responsive to Negley's FOIA request, were never produced in this case, indicating that a search of other sources might lead to these and other additional responsive documents. See Ex. 6 at 188-93 (Hardy admitting that there could be other responsive documents that were never searched or produced in this case).

The FBI does not offer any evidence to dispute these assertions in its motion for summary judgment.

As a matter of law, then, affidavits such as Hardy's (that only contain conclusive statements of searches of one record system when others exist) are insufficient to establish that an agency fulfilled its burden under FOIA and, therefore, that the agency is entitled to summary judgment.  See, e.g., Nation Magazine, 71 F.3d at 890 (in ruling that agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," court noted that conclusory statements that the agency has reviewed relevant files are insufficient as a matter of law) (internal quotations and citation omitted); Campbell, 164 F.3d at 27-29 (holding that district court erred in finding adequate search because, after FBI's UNI searches revealed no responsive documents, FBI was required to broaden its searches to explain the existence of documents that it could not locate in main file searches); Oglesby, 920 F.2d at 68 (holding that the adequacy of the search was improper when affidavit stated "[b]ased upon the information contained in Mr. Oglesby's letter . . ., a search was initiated of the Department record system most likely to contain the information . . ., namely, the Central Records") (internal quotations omitted).

Ignoring the above cases, the FBI cites to a single case that discusses, albeit briefly, the reasonableness of an FBI search in response to a FOIA request; notably, however, the FBI's isolated quotation ignores the remainder of this Court's ruling in that case.  See Raulerson v. Ashcroft, 271 F. Supp. 2d 17 (D.D.C. 2002).  In Raulerson, after the FBI indicated that it conducted a search of UNI that uncovered approximately 70,000 responsive documents, the pro se plaintiff offered no evidence that the FBI conducted an

inadequate search.  See id. at 21.  This Court noted that where an agency is not directed

to specific databases, it "has discretion to confine its inquiry to a central filing system if

additional searches are unlikely to produce any marginal return[.]"  Id. at 21-22.  To this

end, the Court advised:

> [I]f [an agency] discovers that relevant information might exist in another
> set of files or a separate record system, the agency must look at those
> sources as well.

Id. at 22 (emphasis added).  Because the plaintiff in Raulerson "did not request that the

FBI consult additional records systems" and (unlike in the pending case) the FBI did not

discover that additional information might exist in other databases, the Court determined

that the FBI's search was adequate.  See id.

Here, however, discovery has revealed that other relevant information might exist.

For example, and as previously noted, some of the FBI documents that Negley possesses

and that were provided to the FBI (see Ex. 2-C), which are clearly responsive to Negley's

FOIA request, were never produced in this case (see Ex. 3-I), thereby indicating that

"relevant information might exist in another set of files or a separate record system[.]"

See also Ex. 6 at 188-93.  Moreover, and as set forth above, there is ample testimony that

the FBI did not search other record systems despite Negley's insistence that other sources

of responsive documents might exist.  The FBI's failure under Raulerson is particularly

egregious with respect to the Zy database.  Negley was questioned in connection with the

UNABOM investigation.  The Zy database contains all FBI computer-generated

documents associated with that investigation and is full-text searchable.  As a result, it is

indisputable that "relevant information might exist in" the Zy database and, thus, the FBI

"must look at those sources as well."  See Raulerson, 271 F. Supp. at 22.  Accordingly,

Raulerson defeats, rather than supports, the FBI's position regarding the reasonableness of its search here.

Indeed, and perhaps not surprisingly, the FBI has ignored the countless other cases where the FBI has been admonished for its systematically flawed approach to search for documents and respond to FOIA requests by searching only UNI.  See, e.g., O'Neill v. DOJ, No. 06C0671, 2007 U.S. Dist. LEXIS 37807, at *9-10 (E.D. Wis. May 23, 2007) (in finding Hardy's declaration "insufficient to establish that the FBI conducted a reasonable search for records responsive to plaintiff's request[,]" the Court noted that "even if the CRS does not contain information relating to electronic surveillance, the Hardy affidavit does not assert that the FBI does not have some other third information storage system that could contain responsive documents"); Biberman v. FBI, 528 F. Supp. 1140, 1144-45 (S.D.N.Y. 1982) (in holding that the FBI's search was inadequate until all sources of documents "which are reasonably likely to contain references to plaintiffs" were searched, the Court took issue with the FBI's failure to search other databases and rejected the FBI's position that it "will not use any index other than [CRS] unless the plaintiffs are knowledgeable enough about FBI recordkeeping to request the search of a specific index"); Jefferson v. Bureau of Prisons, No. 05-848, 2006 U.S. Dist. LEXIS 81972, at *19 (D.D.C. Nov. 7, 2006) ("Even if an agency states that it has searched its central file system, the failure to aver that all files likely to contain responsive records were searched, precludes the Court from finding that the search was adequate.").

As explained in Negley's summary judgment brief, the FBI's approach appears to be to do the bare minimum to search for responsive documents because it knows that the

vast majority of requestors will never know the extent of its document repositories or its

searching ability.  In this case, the FBI has conceded that it refused to search multiple

sources that are likely to reveal the existence of other documents responsive to Negley's

FOIA request – some of which indisputably exist because Negley possesses them from

other productions.  See supra note 7.  In so doing, the FBI has demonstrated, as a matter

of law, that its search methods were not "reasonably calculated to uncover all relevant

documents."  Oglesby, 920 F.2d at 68.  Therefore, this Court should deny summary

judgment for the FBI and enter partial summary judgment in favor of Negley on the

ground that the FBI's search was unreasonable and is inadequate.

**II.     The FBI is not Entitled to Summary Judgment Because It Failed to Produce
         Responsive Documents Under FOIA.**

Hidden in the FBI's summary judgment brief are suggestions that the FBI has

complied with its obligation under FOIA to produce the few responsive documents that it

has located.  Specifically, the FBI appears to seek, although it is far from uncertain in

reading the FBI's brief, summary judgment on its decision not to produce File S-1575

and its production of portions of Serial 3041.  As set forth below, the FBI's failure to

produce File S-1575, the complete Serial 3041 or any documents from Serial 3865

violates FOIA and, therefore, the FBI is not entitled to summary judgment on either

issue.

To this end, FOIA itself expresses a presumption favoring disclosure.  Founding

Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 831 n.4 (D.C.

Cir. 1983).  The reasoning behind this presumption is that "the public is entitled to know

what its government is doing and why."  Piper v. DOJ, 294 F. Supp. 2d 16, 20 (D.D.C.

2003) (amended, 428 F. Supp. 2d 1, affirmed, 222 Fed. Appx. 1, pet. for cert. denied, 75

U.S.L.W. 3610 (May 3, 2007)) (citation omitted).  Accordingly, "a federal agency is required to release all records that are responsive to a request for the production of the records."  Maydak v. DOJ, 254 F. Supp. 2d 23, 32 (D.D.C. 2003).  If it fails to do so, the Court is authorized to "enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  Id. (citation omitted).

### A.    The FBI's failure to produce File S-1575 violates FOIA.

The FBI asserts that it was appropriate not to produce File S-1575 in response to Negley's FOIA request because Hardy testified in his declaration and at his deposition that the FBI reviewed File S-1575 and it "contains no information about Plaintiff, and has no connection to Plaintiff's home or business."  See Def.'s Mot. at 11.  Negley does not dispute that Hardy did so testify.  However, the FBI ignores that Hardy's further deposition testimony clarified that the FBI's review of File S-1575 was as faulty as its ultimate decision not to produce File S-1575.

Specifically, Hardy testified that because one or more of the pages of File S-1575 contained identifying information for an individual that was not Negley, the FBI determined that not a single page of the entire file could in any way be responsive to Negley's FOIA request.  See Ex. 11 (Excerpts of Deposition Transcript of David M. Hardy (May 23, 2007)), at 146-160.  Indeed, the FBI's approach in reviewing File S-1575 was to review the entire file and make a determination if the entire file would be produced in response to Negley's FOIA request, rather than whether any portions of the file related to Negley and, therefore, whether any portions of the file should have been produced.  See id. at 151-53 ("I don't think you can take it and look at it a page at a time.

I think you look at the whole document as itself, and, if it is about an individual and the entire file is about the individual, then whether or not it has the full identifying data on it or not is irrelevant.").  In so doing, the FBI intended to look in File S-1575 only for Negley's name and a discussion of Negley requesting the UNABOM manifesto from California State University.  See id. at 148-50.  However, when the FBI saw that one of the pages in File S-1575 contained identifying information about another individual, it simply assumed that the entire file had to be about that other individual (and not Negley), even though the FBI's own search and subsequent production of portions of Serial 3041 showed that pages within a subfile may pertain to one individual even though the main file pertains to another individual.  See Ex. 4, ¶ 8.  It appears, then, that no efforts were made to determine if any of the pages of File S-1575 referred to Negley in any manner (and certainly not in any manner other than by name), or if they referred to Negley's business.  See id. at 157.  Indeed, a frustrated Hardy admitted at his deposition that "[the FBI] did not go . . . chasing down other information in that file to see if it was somehow related to Mr. Negley."  Id. at 157.[8]  Therefore, the FBI has not satisfied its burden of proving that no portion of File S-1575 is responsive to Negley's FOIA request.

Indeed, it cannot.  As Negley pointed out in his motion for summary judgment, ASAC Holly, "the agent with the most knowledge regarding the investigation of Mr.

---

[8] Concerned that the FBI was taking an unreasonable position in failing to produce File S-1575, Negley requested that Hardy bring File S-1575 with him to his deposition so Hardy could review the file under oath and testify regarding whether any page of File S-1575 is responsive to Negley's FOIA request (without Negley or his counsel seeing the File's contents).  The FBI refused.

Negley" and who is familiar with the file numbering system used in the investigation for

UNABOMB suspects, testified:

> Q    But would you anticipate that that Sub S 1575 would relate to Mr.
> Negley or could that relate to someone else?
> A    No, I would -- because it's on Exhibit Number 4 relative to the
> investigation conducted and the interview conducted with Mr. Negley, that
> that would be attributed to Mr. Negley, 1575. . . .

See Ex. 7 at 115.  Leaving no doubt, ASAC Holly testified again and again that File S-

1575 related to Negley:

> - A    . . . 1575 as a suspect sub file makes sense.
>   Q    For Mr. Negley?
>   A    For Mr. Negley.[9]
>
> - The Sub S 1575 based upon my recollection appears to be the suspect file
>   under which we documented and worked on the interview of Mr. Negley.[10]
> - Q    Okay.  Do you know exactly what S 1575 or 7575 is?
>   . . .
>   A    It appears to be the suspect sub file for Mr. Negley.[11]
>
> - Q    . . . does that also suggest to you or confirm for you that there was -- that
>   Mr. Negley was suspect 1575 with the file number 149A-SF-106204?
>   A    Yes.
>   Q    And so that I understand how FBI file numbers work, would that
>   suggest that the file number would be 149A-SF-106204-S-1575?
>   A    Correct.[12]

In addition, several documents that relate to Negley and that were previously

produced by the FBI specifically reference File S-1575.  See Ex. 2-C.  In fact, one such

document (dated October 18, 1995) that relates exclusively to Negley contains a

---

[9] Id. at 116.

[10] Id. at 144.

[11] Id. at 144.

[12] Id. at 167.

handwritten notation (towards the middle of the page, in between the "Synopsis" and "Reference" sections) identifying Negley as "Suspect 1575."  See id. (first page).  It defies reason to suggest that although no less than three documents about Negley reference File S-1575 and even refer to Negley as "Suspect 1575," which connection was confirmed by ASAC Holly, File S-1575 itself does not contain a single document about Negley.  Based on this record, it is clear that File S-1575 is responsive to Negley's FOIA request.  Therefore, the Court should deny the FBI's motion for summary judgment[13] on this issue and grant partial summary judgment for Negley ordering the FBI to produce File S-1575.[14]

---

[13] The FBI mistakenly asserts that the Court previously denied Negley's motion for reconsideration regarding the FBI's obligation to produce File S-1575 "once fully briefed."  See Def.'s Mot. at 8-9.  To the contrary, subsequent to the Court's January 8, 2007 ruling that the FBI had properly withheld File S-1575, Negley filed a motion to reconsideration attaching a declaration from Negley regarding the intent of his amended FOIA request.  Thereafter, but before the Court ruled on the pending motion for reconsideration, Negley took the deposition of ASAC Holly, who testified (as set forth above) that File S-1575 was the file "under which [the FBI] documented and worked on the interview of Mr. Negley" and made the connection between File S-1575 and the documents contained in Exhibit 2-C.  On this basis, Negley sought leave from the Court to file a supplemental brief to add ASAC Holly's testimony to its motion for reconsideration.  The Court, however, denied Negley's motion for leave and, therefore, its denial of Negley's motion for reconsideration did not consider ASAC Holly's testimony that File S-1575 concerned Negley.

[14] An independent ground upon which to deny the FBI's motion on this issue is the FBI's failure to address that it had an obligation to produce File S-1575 regardless of whether the file relates to Negley because Negley's April 23, 2002 amended FOIA request sought File S-1575 in its entirety, regardless of its content.  See Ex. 1-D; see also Ex. 2, ¶ 3:

> To the extent that there is any ambiguity in the language of my April 23, 2002 correspondence to the FBI, it was and still is my intent to amend my FOIA request to include, in addition to all files about me at the SFFO, the entire File No. S-1575, regardless of whether or not that file is about me.

**B.    The FBI's failure to produce the entire Serial 3041 violates FOIA and the Court's January 8, 2007 Order.**

In a footnote in its summary judgment brief, the FBI asserts that because Wilson testified that an additional seven pages from Serial 3041 were duplicative of the other 49 pages from Serial 3041 (that the FBI did produce, albeit some redacted and/or withheld under FOIA exemptions), the FBI properly did not have to produce those seven pages. See Def.'s Mot. at 11-12 n.9.  This self-serving assertion completely ignores the Court's January 8, 2007 Order, which required, among other things, the FBI to produce to Negley any additional pages from Serial 3041 (beyond the 47 pages that had previously been identified) that related to Negley or a Vaughn index for any redactions/withholdings.  See Order dated January 8, 2007 (Doc. #43).  The FBI has not disputed that the additional seven pages relate to Negley.[15]  Nor has the FBI produced a Vaughn index for withholding the seven pages in their entirety.  The FBI simply decided not to produce the additional seven pages because it did not think that it had an obligation to do so.  The FBI, however, may not cavalierly disregard this Court's Order.  The FBI is in clear violation of the Court's January 8, 2007 Order, which ordered the FBI to search for and produce all responsive documents from Serial 3041, not just select ones.

Moreover, the FBI's explanation for this admitted violation of the January 8, 2007 Order, that the seven pages withheld are so-called "duplicates" of previously produced documents, should be rejected for multiple reasons.  Given the FBI's misrepresentations throughout this case (including that it hid the existence of these seven additional pages until very recently), this Court should not rely on the FBI's self-serving representation in

this regard.  To this end, some documents produced by the FBI, which appear duplicative

at first glance, are not in fact duplicative because one version contains additional or

different handwritten notes (<u>see</u>, <u>e.g.</u>, Ex. 2-C).  Therefore, even if the typed portions of

two documents are duplicative, one version may contain additional information or

notations not appearing on the previously produced copy.[16]  At the least, the Court should

not be satisfied with what is contained in a footnote of the FBI's brief – an after-the-fact

and self-serving justification for failing to produce documents that are clearly responsive

to Negley's FOIA request and were the subject of a Court Order that the FBI blatantly

ignored.

> **C.      <u>The FBI's Failure to Produce Serial 3865 Violates FOIA.</u>**

Yet another reason to deny summary judgment for the FBI (and grant it for

Negley)[17] is that the FBI has admitted that another serial – Serial 3865 – contains

responsive documents that the FBI unilaterally has chosen not to produce.  <u>Compare</u> Ex.

4, ¶ 7 (Hardy stating that Serial 3865 contains documents responsive to Negley's FOIA

request), <u>with</u> Ex. 6 at 136 (Hardy testifying that "[w]e did not release the contents of

serial 3865 to the Plaintiff").

---

[15] Interestingly, the FBI makes no attempt to explain why it previously misrepresented that Serial 3041 consisted of 47 or 49 pages, when it did not.

[16] The FBI cites two cases that state "tickler" files are not duplicative and, therefore, must be produced in response to a FOIA request.  <u>See</u> Def.'s Mot. at 11-12 n.9. Even assuming that the additional seven pages from Serial 3041 are truly duplicative, however, neither of the cases cited indicate that "tickler" files are the only duplicative documents that must be produced in response to a FOIA request.

[17] <u>See</u> Pl.'s Mot. at 28-29.

For each of the above reasons, the Court should deny the FBI's motion for summary judgment on this issue, instead ruling that Negley is entitled to partial summary judgment ordering the production of File S-1525, the entire Serial 3041 and Serial 3865.

## III.   Conclusion

Negley respectfully requests that the Court deny the FBI's motion for summary judgment[18] and grant partial summary judgment in favor of Negley, as set forth more fully in Negley's Motion for Partial Summary Judgment (and Proposed Order).


Dated: October 9, 2007                                          Respectfully submitted,


                                                                /s/ Prashant K. Khetan
                                                                Paul C. Vitrano, D.C. Bar No. 464223
                                                                Prashant K. Khetan, D.C. Bar No. 477636
                                                                ROSS, DIXON & BELL, LLP
                                                                2001 K Street, NW
                                                                Washington, DC  20006-1040
                                                                Telephone:  (202) 662-2000
                                                                Facsimile:  (202) 662-2190


358451

---

[18] The FBI devotes nearly 75% of the Argument section of its brief to justify the redactions/withholdings from 19 of the 49 pages of Serial 3041 (that it has chosen to identify and produce) by discussing certain FOIA exemptions.  See Def.'s Mot. at 12-19. Although the FBI also cites to the Privacy Act, it does not indicate which redactions/ withholdings are being made under the Privacy Act and, in fact, appears to suggest that the FBI processed Negley's FOIA request pursuant to FOIA notwithstanding the Privacy Act.  As previously indicated, Negley does not challenge the redactions/withholdings made from the small universe of documents produced/identified in Vaughn indexes to date.