UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
JAMES LUTCHER NEGLEY,            )
                                )
        Plaintiff,              )
                                )
    v.                          )       Civil Action No. 03-2126 (GK)
                                )
                                )
FEDERAL BUREAU                  )
OF INVESTIGATION,               )
                                )
        Defendant.              )
———————————————————)

MEMORANDUM OPINION

    Plaintiff, James Lutcher Negley ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff challenges the adequacy of Defendant's search for documents responsive to his FOIA request.

    This matter is now before the Court on Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 71] and Defendant's Second Motion for Summary Judgment [Dkt. No. 72]. Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and for the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is **granted** and Defendant's Second Motion for Summary Judgment is **denied.**

I.    **BACKGROUND**

A.    **Factual Background**[1]

On January 16, 2002, Plaintiff submitted a FOIA request to the FBI's San Francisco Field Office ("SFFO") seeking "a copy of any records about [him] maintained at and by the FBI in [the San Francisco] field office."   On January 30, 2002, Plaintiff was informed that a search of the indices to the Central Records System ("CRS") yielded no responsive records.

Negley appealed this no-record response to the Department of Justice's Office of Information and Privacy ("OIP"), and provided the FBI with additional information to focus its search efforts. Specifically, Negley informed Defendant that his earlier request to another FBI field office in Sacramento yielded a document that referred to File Number 149A-SF-106204.[2]   Additionally, on April 23, 2002, two months after he filed his appeal of the FBI's January 30, 2002, decision, Plaintiff sent a fax to the FBI "amend[ing] his 1/16/2002 FOIA request" to include File Number 149A-SF-106204-Sub

---

[1]     Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute.

[2]     Plaintiff's 1999 FOIA request to the Sacramento office resulted in the production of 50 documents, 21 of which were redacted in part.   One additional document was located in the search, but was withheld from production pursuant to FOIA exemptions.   Declaration of David M. Hardy, Jan. 9, 2004 ("1st Hardy Decl."), at ¶ 17.   Negley challenged this production in federal court, and the FBI was granted summary judgment.   Negley v. United States Dep't of Justice, et al., CA A-01-CA-57-JN (W.D. Tex. March 26, 2002).   Plaintiff took no appeal from that decision.

S-1575.   The SFFO again informed Negley that no records were located other than those already produced to him by the Sacramento Office.

Plaintiff appealed.   In response, Defendant expanded its search to include cross-references that contained Plaintiff's name. The search yielded 47 documents from File Number 149A-SF-106204-SUB S0-3041 ("Serial 3041" or "Sub S0-3041").  Defendant produced 37 of those 47 pages, with 12 of the 37 pages appearing in redacted form. The FBI explained that the documents produced from Serial 3041 were duplicative of the documents produced by the Sacramento office.

In that same response to Negley's appeal, the FBI also explained that the file identified by Negley in his fax--File Number 149A-SF-106204-Sub S-1575 ("Sub S-1575")--was not the same record as the one he had received from the Sacramento office.  The FBI did not produce Sub S-1575, because it deemed the file to be "not responsive to plaintiff's FOIA request for records concerning himself."  1st Hardy Decl. at ¶ 13.  However, during a deposition in March of 2007, Assistant Special Agent-in-Charge Holly ("ASAC Holly") testified that he believed the Sacramento file marked with "149A-SF-106204-Sub S-1575" did indeed refer to a file related to Negley. Dep. of Clifford C. Holly, Mar. 12, 2007 ("Holly Dep."), at 115-16; 144-46 (Ex. 7 to Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot.")).  Negley maintains that his April 23, 2002, amended request to the FBI did not include any limiting language about whether or

not Sub S-1575 pertained to him.  He requested "this file no. as well as any others."  Compl., Ex. D.  He later explained that he wanted the file "regardless of whether or not that file is about [him]."  Supplemental Decl. of James Lutcher Negley, Feb. 8, 2007 ("Negley Decl."), at ¶ 3 (Ex. 2 to Pl.'s Mot.)

Sub S-1575 has still not yet been produced to Negley. However, over the course of the litigation, the FBI has managed to meet a number of Plaintiff's demands.  See Reply in Support of Pl.'s Mot. ("Pl.'s Reply") at 3 ("Negley already has obtained significant relief through this lawsuit.")  In response to a January 8, 2007, Order from this Court to produce Serial 3041 in its entirety, Order (Jan. 8, 2007) [Dkt. No. 43], the FBI located two additional documents after conducting a search of files sent to FBI Headquarters by the SFFO, Third Declaration of David M. Hardy, Feb. 15, 2007 ("3rd Hardy Decl."), at ¶ 17.  Then, after initally refusing to produce seven additional pages from Serial 3041 that it claimed duplicated an earlier production from Sacramento, the FBI finally made them available to Plaintiff.  Fifth Declaration of David M. Hardy, Oct. 8, 2007 ("5th Hardy Decl."), at ¶ 17.

Further, the FBI produced documents from File Number 149A-SF-106204-S0-3865 ("Serial 3865"), which it maintains were entirely duplicative of records produced from Serial 3041.  Id. at ¶ 18. The FBI has also conducted searches of several additional document repositories, expanding on its initial search of a single database.

**4**

This more expansive search turned up a reference to yet another main file, 65-21102. Hardy reported that this file was destroyed "in accordance with applicable destruction schedules" in 1998. 5th Hardy Decl. at ¶ 11. The additional searches also yielded responsive documents that were eventually turned over to Negley. Id. at ¶¶ 6-19

Plaintiff nevertheless maintains that the FBI's pre-lawsuit search of only one file system was inadequate. He contends that its belated searches of other file systems were deficient as well.

**B.   Procedural Background**

On October 17, 2003, Plaintiff filed this suit to challenge the FBI's actions under FOIA, seeking the complete production of agency records concerning him from the SFFO. The Court granted Defendant's Motion for Summary Judgment on July 26, 2004, finding that Plaintiff's action was barred by the doctrine of res judicata because the 47 pages, as identified by the SFFO, were identical to those documents at issue in a prior action before a district court in Texas. Negley v. Federal Bureau of Investigation, No. 04-5348 (D.D.C. July 26, 2004) [Dkt. No. 26]. Further, Hardy's First Declaration, dated January 9, 2004, was found to be sufficient to demonstrate the adequacy of the FBI's search. Id. Plaintiff appealed.

On January 17, 2006, the Court of Appeals reversed and remanded this case for further proceedings. Negley v. Federal

<u>Bureau of Investigation</u>, 169 F. App'x 591 (D.C. Cir. 2006) [Dkt. No. 28]. The Court of Appeals concluded that application of res judicata was in error because while the SFFO made available duplicates of the same 47 pages of documents that the Sacramento office had previously made available, the FBI conceded that the SFFO records were not absolutely identical to those involved in the prior proceedings, at least with regard to internal administrative markings.   <u>Id.</u> at 593-94.   Therefore, the lawsuit aimed at obtaining records stored in the Sacramento office as of October 7, 1999, did not involve the same "nucleus of facts" as a lawsuit aimed at obtaining records stored in the SFFO as of January 16, 2002.  <u>Id.</u>

In addition, the Court of Appeals found that "in [its] assessment, the record, including the correspondence between [Plaintiff] and the FBI, raised sufficient doubt about the scope of the FBI's search to preclude summary judgment."  <u>Id.</u> at 595. Although Plaintiff had requested information about Sub S-1575 in his amended FOIA request, the Court of Appeals noted that subsequent correspondence between the parties does not refer precisely to that file.  Instead there are references to various file numbers, and "[n]owhere does the FBI clarify whether any of these various file references are synonymous, and more important, whether it actually searched Sub S-1575 as Plaintiff explicitly requested."  <u>Id.</u>  In the absence of clarification regarding the

FBI's search for the specific documents requested, the Court of Appeals found that this Court erred in finding the FBI's affidavit sufficient to support summary judgment. <u>Id.</u>

Following the Court of Appeals decision, the Defendant was ordered to (1) conduct a search for, and produce, documents from file numbers 149A-SF-106204, S-1575, 149A-SF-106204-1575, 149A-SF-106204-S, and Sub S0-3041; (2) provide a <u>Vaughn</u> Index and a detailed affidavit explaining any redactions or withholdings; and (3) allow Plaintiff to take depositions of the FBI personnel. Scheduling Order (Feb. 2, 2006) [Dkt. No. 31].

On January 16, 2007, after briefing the issue, Defendant stated that it had provided Plaintiff with a complete <u>Vaughn</u> Index for Sub S0-3041 and that the 47 pages from Sub S0-3041 previously released to Plaintiff represented all responsive documents. Def.'s Praecipe in Resp. to Jan. 8, 2007 Order [Dkt. No. 45]. On January 19, 2007, the FBI filed a corrected praecipe advising the Court and Plaintiff's counsel of finding two additional documents not previously released from Sub S0-3041. Notice of Correction to Def.'s Praecipe in Resp. to Jan. 8, 2007 Order ("Corrected Praecipe") [Dkt. No. 47]. The FBI produced those documents in full to Plaintiff. <u>Id.</u>

Plaintiff completed his depositions of FBI personnel on July 13, 2007, and the parties completed their briefing for cross-motions for summary judgment on October 30, 2007.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute over a material fact is genuine if the evidence is such that a reasonable [fact-finder] could return a [decision] for the non-moving party." Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The very purpose of FOIA is to "facilitate public access to Government documents" and "to pierce the veil of secrecy and to open agency action to the light of public scrutiny." McCutchen v. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994). In responding to a FOIA request, an agency is under an obligation to conduct a reasonable search for responsive records. Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

The agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68.  There is no requirement that an agency search every record system in which responsive documents might conceivably be found. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995).  However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.  Id. at 892.

The adequacy of any FOIA search is measured by a standard of "reasonableness" and is dependent on the circumstances of the case. Schrecker v. United States Dep't of Justice, 349 F.3d 657, 663 (D.C. Cir. 2003). The adequacy of a search is not determined by its results, but by the method of the search itself.  Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  See also Raulerson v. Ashcroft, 271 F. Supp. 2d 17 (D.D.C. 2002) ("[I]f [the agency] discovers that relevant information might exist in another set of files or a separate record system, the agency must look at those sources as well.").  If the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper. Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998).

To show reasonableness at the summary judgment phase and to allow the court to determine if the search was adequate, an agency must provide, "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68.

## III. ANALYSIS

As noted, Plaintiff acknowledges that Defendant has provided "significant relief" as this litigation has progressed. Nonetheless, he argues that the FBI's pre-lawsuit search was inadequate as a matter of law, and that the FBI's production of responsive documents still fails to comply with FOIA requirements.

### A.   Defendant's Pre-Lawsuit Search for Responsive Documents Was Inadequate.

In his Motion for Partial Summary Judgment, Plaintiff argues that Defendant's pre-lawsuit search for documents responsive to his FOIA request was inadequate because despite his broad request "for any records about him," and the existence of nine different sources of searchable records,[3] the FBI's only pre-lawsuit search was of

---

[3]    The other sources include: (1) Investigative Case Management ("ICM"), which allows for index searches and contains documents related to administrative management of cases, (2) Electronic Case File ("ECF"), which contains all FBI-generated documents and is full-text searchable, (3) Electronic Surveillance ("ELSUR") indices, (4) Zylmage databases ("Zy") created for the UNABOM file, (5) the card system in the SFFO, (6) the card system at FBI headquarters ("FBIHQ"), (7) handwritten notes, (8) so-called "personal" files, and (9) restricted documents. 5th Hardy Decl. at ¶¶ 6-14.

one such source--the Universal Index ("UNI").[4]   Pl.'s Mot. at 21-23.

Defendant responds by claiming that Plaintiff's request was general, and under <u>Campbell</u>, "[w]hen a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal returns; in other words, the agency generally need not search every record system." <u>Campbell</u>, 164 F.3d at 28; <u>see also</u> Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Opp'n") at 4.

Moreover, Defendant contends that since the filing of this lawsuit, and at the request of Plaintiff, it has completed additional searches of the nine databases, and still has only been able to identify the same documents that have been released to him, in whole or in part.

As noted earlier, our Court of Appeals has stressed that the adequacy of a search it not determined by the results produced, but

---

[4]    The FBI maintains information that it has acquired in the course of investigations in a record system called the CRS.  In 1995, the FBI consolidated portions of the CRS into the Automated Case Support ("ACS"), which is the "mechanism that the FBI uses to search the CRS."  1st Hardy Decl. at ¶ 9.  The ACS consists of three integrated, yet separately functioning, automated applications: the UNI, ICM, and ECF. <u>Id.</u> at ¶ 23.  Plaintiff asserts that searching only UNI is inadequate because it allows only for an index search, Pl.'s Mot. at 16-17; deciding which terms to index is left entirely to the discretion of an agent, and not all names in a file are indexed, 1st Hardy Decl. at  ¶ 24. Further, UNI does not allow the agent to input phrases or to search the full text of computerized records. Pl.'s Mot. at 16-17.

by the method adopted by the agency to locate responsive documents. See Weisberg, 745 F.2d at 1485. Oglesby establishes that there is no requirement that Defendant search every record system in which responsive documents might conceivably be found. Oglesby, 920 F.2d at 68.

However, Defendant cannot limit its search to only one record system, which in this case was the UNI, if there are others that were "likely to turn up the information requested." Id.; see also Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (finding that search must be "reasonably calculated to uncover all relevant documents"). The reasonableness of the search is "dependent upon the circumstances of the case." Id. at 1351. Where, as is the case here, the requester submits additional information to supplement the initial request, the agency is obliged to incorporate that information in crafting the scope of its search. See Campbell, 164 F.3d at 28 ("[C]ourt[s] evaluate[] the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception.").

In this case, Plaintiff has, through great diligence and perseverance, learned from the FBI that there are nine other file systems that could have been searched. One of those nine is the Zy database, which, as described in Defendant's declaration, served as a stand-alone database created specifically to index documents in

the enormous UNABOM investigation.  See 5th Hardy Decl. at ¶ 9.
Since Plaintiff was at one time questioned by Defendant in
connection with the UNABOM investigation, it is more than
reasonable to conclude that the UNI database was not the only
location where responsive records would be located but that the Zy
database was.  Defendant's persistent and inexplicable refusal to
search at least the dedicated Zy database does not demonstrate a
"good faith effort to conduct a search for the requested records,
using methods which can be reasonably expected to produce the
information requested."  See Oglesby, 920 F.2d at 68.  To the
contrary, it actually reflects a distressing active disregard of
its obligations under FOIA.

The Defendant's position is further undermined when the Court
considers the scope of the request. Plaintiff made clear that he
was not requesting records about himself which were maintained only
in "main" files.  He also provided specific file numbers in his
appeals of Defendant's initial decisions and in his amended FOIA
request, so as to allow the FBI to construe his FOIA request
liberally and broaden its search beyond the main files in the UNI.
Cf. Nation Magazine, 71 F.3d at 890.

Nonetheless, Defendant repeatedly conducted searches of only
the one record system, UNI, and challenged Plaintiff's efforts at
every turn.  Initially, it only searched "main" files for the
information, in furtherance of its policy of narrowing FOIA

-13-

searches to this universe.  3rd Hardy Decl. at ¶ 15.  The FBI eventually expanded its search to include cross-references.  Id. at ¶ 16.  In several declarations, Hardy informed Plaintiff that the FBI conducted these searches in the CRS file system.  See, e.g., 1st Hardy Decl. at ¶ 6; 3rd Hardy Decl. at ¶ 8.  In later deposition testimony, Hardy "clarified" his former testimony and said that Defendant searched only one component of CRS, the UNI file system.  Dep. of David M. Hardy, May 23, 2007 ("Hardy Dep."), at 43-44; 193; 198 (Ex. 6 to Pl.'s Mot.).  As already noted, the UNI database is searchable only by indexed terms, which are identified at least in part by discretionary decisions left to case agents who may have limited knowledge.  Id. at ¶¶ 13(c)-14.

Regardless of any policy or conventional operating procedures, it is clear that Plaintiff's requests required Defendant to perform more rigorous searches for responsive documents.  Cf. Wiesner v. Fed. Bureau of Investigation, 577 F. Supp. 2d 450, 457 (D.D.C. 2008) (taking issue with FBI's "naked reliance on its own procedures" to satisfy its FOIA obligations).

Defendant's pre-lawsuit searches never ranged beyond the UNI, despite misleading representations otherwise.  For this reason, the Court concludes that Defendant failed to demonstrate beyond material doubt that its pre-suit search was reasonably calculated to uncover all relevant documents.  Therefore, summary judgment for Defendant on the adequacy of the search is not justified, and its

Second Motion for Summary Judgment must be denied.   See Weisberg, 705 F.2d at 1351.

**B.   Defendant's Production of Documents Was Insufficient.**

The FBI has met some of Plaintiff's demands over the course of litigation.   Specifically, it finally conducted searches of the nine additional record systems at its disposal.   Those searches yielded a number of relevant responses that have been produced to Negley, 5th Hardy Decl. at ¶¶ 16-18; some of these searches yielded no responsive records.   Plaintiff argues that the FBI's production remains inadequate in several key respects.

**1.   Defendant Has Not Complied with Plaintiff's FOIA Request for Sub S-1575.**

The FBI still has not produced the Sub S-1575 file.   5th Hardy Decl. at ¶ 4 n.2.   In his Fifth Declaration, Hardy maintains that this file "concerns a third party completely devoid of any connection to [P]laintiff."   Id.   Negley insists that this detail is irrelevant, and that his request for this record was not conditioned on the file's relationship to him.   Pl.'s Mot. at 31-32.   He also presents direct evidence, in the form of deposition testimony from ASAC Holly, that the FBI's representations about the content of Sub S-1575 may be inaccurate.   ASAC Holly testified that he believes Sub S-1575 does relate to Negley.   Holly Dep. at 115-16; 144-46.

FOIA requests are construed liberally.  Any doubt about the adequacy of the search should be resolved in favor of the requester.  Campbell, 164 F.3d at 27 (noting "congressional intent tilting the scale in favor of disclosure"); see also Mack v. Dep't of the Navy, 259 F. Supp. 2d 99, 104 (D.D.C. 2003).  Plaintiff requested Sub S-1575 "regardless of whether or not that file is about [him]."  The request was not confined to responsive results that related to him.  The FBI's stubborn refusal to turn over this file flies in the face of longstanding principles that favor disclosure in the FOIA context.

This refusal is not the first time the FBI has resisted complying with legal mandates in the course of this litigation.

On January 8, 2007, Defendant was ordered to "conduct a search for and produce to Plaintiff any additional pages from SUB S0-3041 that relate to Plaintiff."  Order (Jan. 8, 2007) at 2.  The FBI located and produced two additional pages from this file after conducting a hand-search.  Corrected Praecipe at 1.  This additional production came from the same file that was produced to Negley in 2002.  This extremely tardy disclosure has never been explained.

Less than one month after that update, Hardy reported that Serial 3041 contained an additional seven responsive pages.  He claimed that they were duplicates of pages already produced.  3rd Hardy Decl. at ¶ 5 n.2.  The FBI did not produce these pages from

Serial 3041.   Instead of complying with the Court's order and disclosing these documents to Negley, the FBI carved out its own exception to the clearly worded order and elected to withhold production of these duplicates because nothing in them "suggested additional information would be revealed."  Def.'s Mot. at 11 n.9.

Later in 2007, the FBI reversed course and finally produced the seven duplicate pages from Serial 3041.  5th Hardy Decl. at ¶ 17.  It has provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions.[5]   Such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search.

### 2.   Defendant's Recent Searches Do Not Comply with FOIA Requirements.

Negley maintains that the FBI's recent searches of the nine file systems still do not fulfill its obligations under FOIA.  He takes issue with the search terms used in certain searches, and

---

[5]    The Court is troubled by the FBI's similar conduct in a related production dispute.  In his Second Declaration, Hardy admitted that a "renewed search of the CRS" yielded records from Serial 3865.  Second Declaration of David M. Hardy, May 1, 2006, at ¶ 7.  He indicated that they were duplicative of previously produced items.  Id.  In his deposition testimony, Hardy was questioned about why Defendant had never before mentioned this responsive file, and he responded that "there should have been mention" of Serial 3865.  Hardy Dep. at 170.  By October of 2007, Defendant had finally produced these responsive, if duplicative, records to Negley.

with the Defendant's explanation for the fact that some searches turned up no responsive documents.

Under Oglesby, a "reasonably detailed affidavit" will "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Id. at 68. These requirements allow the requester and the Court an opportunity to determine the adequacy of the search.

Defendant devoted nearly three pages of its most recent declaration to explain how these new searches were conducted. 5th Hardy Decl. at ¶¶ 5-14. In addressing three of those nine searches--the ELSUR, Zy, and FBIHQ searches--Hardy does not describe which search terms were used. See 5th Hardy Decl. at ¶¶ 8-9, 11. This plainly violates the rule set forth in Oglesby.

In discussing the FBI's examination of file systems containing handwritten notes, personal files, and restricted files, Hardy appears to rely on the results uncovered in CRS and ACS searches, although it is unclear how exactly these three file systems were searched. Hardy explains the search process only by reference to searches that were conducted of the CRS or ACS. In doing so, the Defendant's affidavit explaining the above three searches does not set forth with sufficient clarity which search terms were used.

For instance, Hardy states that handwritten notes are "stored in the 1-A portion of the investigative file, which is indexed in

the ACS." <u>Id.</u> at ¶ 12.  He reported that if there were responsive notes, they "may have been filed" in the 1-A section of the file. He stated that "in this case, the ACS search did not reveal the existence of any 1-A envelopes." <u>Id.</u> ACS is comprised of several file systems (ECF, UNI, and ICM), each of which was searched using certain search terms, or, in the case of ICM, not searched using Negley's name.  Hardy's declaration sheds no clear light on how the FBI went about conducting a search of handwritten notes, personal files, or restricted files.  The affidavit is inadequate with respect to these three searches.

Finally, Negley complains that the FBI's searches of the three remaining databases (ECF, ICM, and SFFO card index) are also inadequate.  Pl.'s Reply at 10-11.

For both the ECF and SFFO card index search, Hardy explained the type of search--"manual" in the case of the SFFO card index and "full text" in the case of ECF--as well as the specific search terms used.  However, Plaintiff rightly points out that the search terms were full versions of Negley's name.  The FBI did not search

for other permutations of the name,[6] and therefore the search was not reasonably calculated to turn up all responsive files.

In addressing the final search, that of the ICM file system, Hardy described the purpose of the file system, how it was maintained, and the fact that the FBI can search the ICM only by inputting case numbers.  Cf. Dep. of Sandra A. Figoni, July 13, 2007, at 100 (Ex. 8 to Pl.'s Mot.) (explaining that ICM is searchable by file number and perhaps date).  Therefore, Defendant was unable to search ICM using Negley's name.  5th Hardy Decl. at ¶ 6. However, Defendant makes no representations about whether it searched for file numbers relevant to Negley, of which there are many in this case, or why a search of these file numbers could reasonably be expected to be fruitless.  As a result, the Declaration does not meet the requirements of the statute.  See Oglesby, 920 F.2d at 68.

**IV.   CONCLUSION**

---

[6]      The FBI searched ECF, an electronic file system, for "James Lutcher Negley." 5th Hardy Decl. at ¶ 7.  It is unclear from the affidavit whether such a search in ECF is as wide-ranging as a search of the same term in UNI.  Hardy explained that earlier UNI searches for "James Lutcher Negley" had "cover[ed] a six-way phonetic breakdown of the name." 3rd Hardy Decl. at ¶ 15.  This means that other permutations of the name were covered in the search.  The FBI should indicate in its next affidavit whether ECF was similarly searched.

Hardy's Fifth Declaration is similarly insufficient with respect to the search of the SFFO card index.  There is no way to determine if Defendant's manual search of cards pertaining to "Negley, James Lutcher" was reasonably calculated to turn up responsive documents, because there is no description of how the SFFO card index was created.

For the foregoing reasons, Defendant's Second Motion for Summary Judgment is **denied,** and Plaintiff's Motion for Partial Summary Judgment is **granted.**   An order shall issue with this Memorandum Opinion.


                                    /s/_____
September 24, 2009                   Gladys Kessler
                                    United States District Judge

**Copies to**: attorneys on record via ECF

-21-