UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JAMES LUTCHER NEGLEY,       )
                          )
      Plaintiff,        )
  vs.                    )
                          )   Civil Action No. 03-2126 (GK)
FEDERAL BUREAU       )
OF INVESTIGATION,     )
                          )
      Defendant.      )
                          )
                          )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

This case presents an extraordinarily successful, extensive, and revealing FOIA lawsuit. Indeed, after nearly six years of litigation, including two rounds of summary judgment briefing and an appeal to the federal circuit court, this case is finally nearing resolution. Though Plaintiff James Lutcher Negley ("Negley") has been granted additional discovery (which may lead to another round of summary judgment briefing by the parties), in its September 24, 2009 ruling, the Court granted summary judgment for Negley on virtually every pending issue.[1] Specifically, the Court ordered Defendant Federal Bureau of Investigation (the "FBI") to: produce within 30 days File Number 149A-SF-106204-S-1575 ("File No. S-1575"), a file that Negley has sought from the FBI as early as April 2002 but that the FBI has repeatedly refused to produce without a reasonable basis; conduct within 60 days reasonable searches of nine different sources of information and produce within 90 days all responsive documents from those sources; produce

_____

[1] The Court granted Negley's motion for partial summary judgment. In this regard, the pending motion for attorneys' fees and costs is being filed under Rule 54(d)(2)(B), which requires that such motions be filed within 14 days after entry of a judgment. Negley reserves his right to file a subsequent motion for attorneys' fees and costs, if appropriate, after any remaining discovery and if he obtains judgment on any remaining claims (or if the case is appealed).

within 90 days a detailed affidavit explaining the searches conducted; and allow Negley to take additional depositions, some at the FBI's cost. Based on this latest ruling (and prior Orders), it is clear that Negley is a "prevailing party" under 5 U.S.C. § 552 (a)(4)(E), such that he is eligible to recover attorneys' fees.

However, and as set forth in greater detail below, the public benefit of the Court's September 24, 2009 Opinion and Order and this case extend far beyond Negley. To the contrary, and as a direct result of the depositions and other discovery that Negley was able to obtain in this case, the FBI's inadequate and unlawful system of maintaining records and responding to FOIA requests has been exposed. Specifically, this case has revealed the baseline method by which the FBI will search for responsive documents unless a requestor is armed with information to demand otherwise. In this case, Negley uncovered not only the existence of databases and other sources of potentially responsive documents that have never before been discussed in caselaw (either at all or not in a manner helpful for future FOIA requestors or litigants), but also the ways these various sources of responsive documents are indexed to permit the best possible search – this information is now available for future FOIA requestors and litigants to utilize in requesting thorough and reasonably searches of FBI records for responsive documents. Indeed, Negley has not only vindicated his rights, but has helped establish critical precedent to deter future FBI misconduct in responding to FOIA requests. Consequently, Negley is entitled to attorneys' fees.

Finally, the requested fee award is reasonable both in terms of the rates charged as well as the number of hours expended. As explained herein, and after making appropriate reductions, Negley requests attorneys' fees in the amount of $198,854.00 and costs of $10,040.80. As the Court is well aware, this case has continued for almost six years. The resources expended by the Court to adjudicate this case, and by Negley to prosecute the case, are a direct result of the FBI's

repeated failures and intentional gamesmanship in responding properly to Negley's FOIA request. Indeed, and as set forth below, the Court noted as much in its September 24, 2009 Memorandum Opinion. Given the results obtained in this case, and the enormous efforts required to obtain those results due to the FBI's actions, the requested fee award is entirely reasonable under applicable law.

For these reasons, and as set forth in greater detail below, Negley requests a total award of $208,894.80.

## BACKGROUND

As the facts related to this case are set forth in detail in the parties' briefing, incorporated by the Court in its September 24, 2009 Memorandum Opinion, we provide only a brief summary of the pertinent facts. See Negley v. FBI, No. 03-2126, 2009 U.S. Dist. LEXIS 87880, at *1-9 (D.D.C. Sept. 24, 2009).

On January 16, 2002, Negley submitted a FOIA request to the FBI for "any records about me maintained at and by the FBI in [the San Francisco] field office [(the "SFFO")]." In response to being told that there was no responsive records, Negley filed an appeal, noting that documents produced under a prior FOIA request to the Sacramento Field Office[2] made specific reference to a Main File number (File Number 149A-SF-106204) (the "Main File"), which appeared to denote a San Francisco file containing information about Negley that would be responsive to Negley's FOIA request. On April 23, 2002, Negley amended his FOIA request to all files about him maintained at and by the SFFO, and File S-1575 in its entirety, regardless of its content.

The FBI responded by admitting that there were records responsive to Negley's FOIA request at the SFFO (albeit the same documents produced by the Sacramento Field Office), but it

---

[2] The Sacramento FOIA request requested "all records concerning [Negley] maintained at the FBI's field office in Sacramento, California."

did not produce any documents.  This response made no mention of File S-1575.  Negley once

again appealed.  This time the FBI produced 37 documents (12 pages were redacted) from File

No. 149A-SF-106204-S0-3041 ("Serial 3041"), a serial from the Main File.  With regard to File

S-1575, the FBI summarily stated:

> Please be advised that the records that consist of the San Francisco Field Office's
> 149A-SF-106204-S-1575 are not the same records that you faxed to our Office
> and are not responsive to your request for records concerning you.

Dissatisfied with the FBI's search for, explanations regarding and lack of production of

documents responsive to Negley's FOIA request, including File S-1575, Negley filed the

pending lawsuit to obtain a complete production of agency records responsive to his FOIA

request.

In this lawsuit and following remand,[3] this Court ordered the FBI to produce Serial 3041

in its entirety.  Order dated January 8, 2007 (Doc. #43), ¶ 1.  Through two filings in response to

this Court's Order, the FBI represented that, in addition to the 37 pages produced prior to the

lawsuit, the FBI had produced (since the inception of the lawsuit) an additional 9 redacted pages

(and one page was withheld in its entirety), and was producing an additional 2 pages, from Serial

3041.  See Praecipe dated January 16, 2007 (Doc. #45) and Notice of Correction to Praecipe

dated January 19, 2007 (Doc. #47).  Evidently, the last two pages were "found" following a

"hand search," which inexplicably the FBI had not conducted in the prior five years since

Negley's FOIA request first had been made.  See Correction to Praecipe dated January 19, 2007

(Doc. #47).  Also in response to these various Court Orders and during the pendency of this

litigation, the FBI produced documents from File No. 149A-SF-106204-S0-3865 ("Serial

---

[3] The FBI previously was granted summary judgment in this action (based on *res judicata*), but that judgment was reversed on appeal.

3865"), another serial from the Main File.  No documents from any other serials of the Main File or File S-1575 have been produced.

The parties then filed cross-motions for summary judgment.  In its ruling on September 24, 2009, this Court denied in its entirety the FBI's Second Motion for Summary Judgment and granted Negley's Motion for Partial Summary Judgment.  In so ruling, the Court noted the following:

- With respect to the FBI's sources of potentially responsive documents: "In this case, Plaintiff has, through great diligence and perseverance, learned from the FBI that there are nine other file systems that could have been searched."

- "Defendant's persistent and inexplicable refusal to search at least the dedicated Zy database . . . actually reflects a distressing active disregard of its obligations under FOIA."

- "Defendant repeatedly conducted searches of only the one record system, UNI, and challenged Plaintiff's efforts at every turn. . . . Defendant's pre-lawsuit searches never ranged beyond the UNI, despite misleading representations otherwise."

- With respect to the FBI's repeated failure to produce File S-1575: "The FBI's stubborn refusal to turn over this file flies in the face of longstanding principles that favor disclosure in the FOIA context.  This refusal is not the first time the FBI has resisted complying with legal mandates in the course of this litigation."

- Referring to the FBI's sudden discovery and production (five years after Negley submitted his FOIA request) of two additional responsive documents from Serial

3041 in response to Court Order: "This extremely tardy disclosure has never been explained."

- Referring to the FBI's initial refusal to produce all responsive documents from Serial 3041, despite Court Order: "Instead of complying with the Court's order and disclosing these documents to Negley, the FBI carved out its own exception to the clearly worded order and elected to withhold production of these duplicates because nothing in them 'suggested additional information would be revealed.'"

- "[The FBI] has provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions. Such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search."

Negley, 2009 U.S. Dist. LEXIS 87880, at *15-21.

The Court's accompanying Order provides for the following:

- Within 30 days, the FBI must produce File S-1575 in its entirety, along with a Vaughn index and a detailed affidavit for any redactions and/or withholdings. Negley may take the deposition of the affiant.

- Within 30 days, Negley may take the deposition of David Hardy (for a second time), at the FBI's cost.

- Within 60 days, the FBI must conduct searches of 9 different sources of potentially responsive documents (or, for some sources, explain in sufficient detail its manner of previously conducting a reasonable search).

- Within 90 days, the FBI must produce all responsive documents, along with a Vaughn index for any redactions and/or withholdings.

- Within 90 days, the FBI must produce a detailed affidavit explaining the searches conducted, including all search terms used, and the bases for any redactions and/or withholdings. Negley may take the deposition of the affiant.

Order dated September 24, 2009 (Doc. #90).

Following that ruling, Negley has filed the pending motion for attorneys' fees and costs.

## ARGUMENT

### I.   NEGLEY IS ELIGIBLE FOR AND ENTITLED TO AN ATTORNEYS' FEE AWARD UNDER THE FEE-SHIFTING PROVISION OF FOIA.

FOIA provides for awards of attorneys' fees to prevailing plaintiffs for two purposes: (1) "to encourage Freedom of Information Act suits that benefit the public interest;" and (2) to serve as "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." LaSalle Extension Univ. v. Fed. Trade Comm'n, 627 F.2d 481, 484 (D.C. Cir. 1980); see also Davy v. CIA, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (noting that the provision for attorneys' fees was enacted to "remove the incentive for administrative resistence [sic] to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation"). To obtain such an award, a plaintiff must demonstrate both that he: (1) has "substantially prevailed" and is thus eligible for an award, 5 U.S.C. § 552(a)(4)(E); and (2) is entitled to an award under a balancing of relevant factors. Cotton v. Heyman, 63 F.3d 1115, 1117 (D.C. Cir. 1995).

A.      **Negley Has "Substantially Prevailed."**

A party has "substantially prevailed" if it has "been awarded some relief by [a] court,

either in a judgment on the merits or in a court-ordered consent decree." Oil, Chem. & Atomic

Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 456-57 (D.C. Cir. 2002) (citing

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598,

603 (2001) (internal quotations omitted)).[4] Here, the Court has granted significant relief on the

merits to Negley on multiple occasions.

Most recently, the Court's September 24, 2009 ruling granted partial summary judgment

for Negley, ordering, among other things, that the FBI produce File S-1575 (a file that Negley

first sought on April 23, 2002).  In this regard, this Court found: "The FBI's stubborn refusal to

turn over this file flies in the face of longstanding principles that favor disclosure in the FOIA

context."  In addition, this Court ordered the FBI to conduct new searches and produce

documents located in those searches, and authorized additional discovery (including additional

depositions of FBI representatives, some of which would be at the FBI's cost).  As this Court

noted in Judicial Watch, Inc. v. DOC, 384 F. Supp. 2d 163 (D.D.C. 2005), aff'd in part and rev'd

in part on other grounds, 470 F.3d 363 (D.C. Cir. 2006), Court orders for the release of

documents, additional searches and further discovery "qualify as court-awarded relief[.]" Id. at

168 (citation omitted); see also Summers v. DOJ, 477 F. Supp. 2d 56, (D.D.C. 2007) (noting that

Court orders to produce documents by certain dates or otherwise provide the plaintiff with the

---

[4] Under the current fee-shifting provision of FOIA, a plaintiff "substantially prevails" if
he has obtained relief either through "(1) a judicial order or an enforceable written agreement or
consent decree, or (2) a voluntary or unilateral change in position by the agency, if the
complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E).  Although Negley does not
believe that the 2007 OPEN Government Act amendments apply retroactively to his lawsuit that
was filed in 2003, see Summers v. Department of Justice, 569 F.3d 500, 502 (D.C. Cir. 2009),
even under the newer version of the provision, Negley has substantially prevailed for the same
reasons as set forth below.

precise relief sought support a finding of eligibility for attorneys' fees), reconsideration denied, 2007 U.S. Dist. LEXIS 52704 (D.D.C. 2007), aff'd, 569 F.3d 500 (D.C. Cir. 2009).

This was not, however, the first time that Negley obtained Court-ordered relief in this case. To the contrary, the Court previously ordered the FBI to produce Serial 3041 in its entirety. As a result of that Order, the FBI produced responsive documents from Serial 3041 (and Serial 3865), including additional documents that it located during a "hand search" that it did not previously conduct without Court Order. Commenting on the five years and Court Order that were necessary before the FBI conducted the hand search and produced the responsive documents from Serial 3041, this Court stated: "[t]his extremely tardy disclosure has never been explained." Negley, 2009 U.S. Dist. LEXIS 87880 at *20.

Finally, and by Court Order, the Court permitted Negley to take multiple depositions throughout this case. In this regard, not only did the Court order the FBI to make available for deposition individuals to discuss the searches conducted by the FBI in response to Negley's FOIA request, but also the FBI field agent that initially interviewed Negley over 10 years ago in conjunction with an FBI investigation. It was the information gathered from these very Court ordered depositions that allowed Negley to uncover the various inadequacies in the FBI's practices that support the requested fee award here.

Having been afforded court-ordered relief on numerous occasions, it is unquestionable that Negley has "substantially prevailed" and is eligible for an attorneys' fee award.

### B.    **Balancing the Relevant Factors Warrants an Award.**

In addition, before granting an award of attorneys' fees to a plaintiff that has substantially prevailed, a court also must consider the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested

information." Burka v. United States Dep't of Health & Human Servs., 142 F.3d 1286, 1288

(D.C. Cir. 1998) (internal citations and quotations omitted).  In determining a plaintiff's

entitlement to attorneys' fees, however, the Court must balance all four criteria.  Ralph Hoar &

Assocs. v. Nat'l Highway Traffic Safety Admin., 985 F. Supp. 1, 9 (D.D.C. 1997).  In this

regard, "no one factor is dispositive[.]"  Davy, 550 F.3d at 1159.  Balancing these four factors, as

set forth below, Negley is entitled to attorneys' fees.

    1. Public Benefit

  According to the United States Court of Appeals for the District of Columbia Circuit, the

first factor requires consideration, among other things, of the effect of the litigation for which

fees are requested and the potential public value of the information sought.  Davy, 550 F.3d at

1159.  In making this inquiry, it is important to remember the stated purposes for allowing

attorneys' fees in FOIA cases:  to "remove the incentive for administrative resistence [sic] to

disclosure requests based not on the merits of exemption claims, but on the knowledge that many

FOIA plaintiffs do not have the financial resources or economic incentives to pursue their

requests through expensive litigation[,]" Davy, 550 F.3d at 1158; and as "compensation for

enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of

Information Act's requirements."  LaSalle, 627 F.2d at 484.

  It is difficult to conceive of a FOIA case that could more clearly provide a "public

benefit."  This case has resulted in extraordinary information regarding how the FBI maintains

its records and the baseline method by which it will search for and respond to FOIA requests,

unless a FOIA requester has information to demand otherwise.  By way of example, during

discovery and as noted by this Court, Negley, "through great diligence and perseverance,"

discovered that the FBI maintains the Zy database – "which, as described in Defendant's

declaration, served as a stand-alone database created specifically to index documents in the

enormous UNABOM investigation." <u>Negley</u>, 2009 U.S. Dist. LEXIS 87880, at *15.
Undersigned counsel is not aware of a single federal court opinion (including on LEXIS and
Westlaw), other than this one, that mentions, let alone discusses, the existence of the Zy
database.[5]

Similarly, and as this Court noted, "[i]n this case, Plaintiff has, through great diligence
and perseverance, learned from the FBI that there are [eight] other file systems that could have
been searched." <u>Negley</u>, 2009 U.S. Dist. LEXIS 87880 at *15.  Indeed, in preparing its briefing
for summary judgment, undersigned counsel learned that the FBI has a standard response to all
such similar FOIA requests – submit a declaration from David Hardy that, on its face, discusses
the FBI's complex records system and suggests that reasonable searches were conducted.  To the
contrary, and as Negley uncovered in this litigation by deposition not only of Hardy but also the
individuals that actually conduct the searches, Hardy's boilerplate affidavit is misleading.  In
fact, there are numerous sources of potentially responsive information.  The FBI, however,
routinely searches only <u>one</u> of those databases (the UNI), which in itself is flawed because the
only method to search UNI is via index terms previously entered by an agent/clerk.  As this
Court noted, "Defendant repeatedly conducted searches of only the one record system, UNI, and
challenged Plaintiff's efforts at every turn."[6]  As with the Zy database, undersigned counsel is
not aware of a single federal court opinion (including on LEXIS and Westlaw), other than this
one, that mentions, let alone discusses, the existence of another database uncovered in this case –

---

[5] Even after admitting the existence of such a database, the FBI provided no explanation
for why it never searches the database:  "Defendant's persistent and inexplicable refusal to
search at least the dedicated Zy database . . . actually reflects a distressing active disregard of its
obligations under FOIA."  <u>Negley</u>, 2009 U.S. Dist. LEXIS 87880, at *16.

[6] Similarly, the Court found that "Defendant's pre-lawsuit searches never ranged beyond
the UNI, despite misleading representations otherwise."  <u>Negley</u>, 2009 U.S. Dist. LEXIS 87880,
at *16-17.

the SFFO card index.  And while prior federal court opinions have mentioned databases such as ELSUR, ACS, and ICM, none have discussed, as this case revealed, how those databases are maintained (*i.e.*, indexed) such that they can be effectively searched for responsive documents.

In other words, the information obtained from the FBI in this case provides important information to the public about how the FBI maintains its records and responds to FOIA requests.  For future FOIA requestors and litigants, this information is invaluable.  Armed with this information, future FOIA requestors and litigants will be able to demand that the FBI conduct reasonable searches of <u>all</u> potential sources of information with the correct search terms (and not just of a single database with an inherently faulty indexing system).  The net result will be furtherance of the purpose of FOIA, which is to "facilitate public access to Government documents" and is "meant to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." <u>McCutchen v. Dep't of Health & Human Servs.</u>, 30 F.3d 183, 184 (D.C. Cir. 1994) (citation omitted); <u>see also</u> <u>Stern v. FBI</u>, 737 F.2d 84, 88 (D.C. Cir. 1984) ("The central purpose of FOIA is to 'open[] up the workings of government to public scrutiny' through the disclosure of government records.") (citation omitted); <u>Mack v. Dep't of the Navy</u>, 259 F. Supp. 2d 99, 104 (D.D.C. 2003) (noting that the purpose of FOIA is to "afford[] the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure").

Because the extraordinary information uncovered in this case constitutes a great public benefit, this factor weighs heavily in favor of an award.

2.    <u>Commercial Benefit/Nature of Negley's Interest</u>

The second and third factors – whether a plaintiff will derive a commercial benefit from the disclosure and the nature of plaintiff's interest in the records – are closely related and typically considered together. <u>Cotton</u>, 63 F.3d at 1120 (quoting <u>Tax Analysts v. United States</u>

Dep't of Justice, 965 F.2d 1092, 1120 (D.C. Cir. 1992)).  In this regard, a finding of private

interest and commercial benefit does not *per se* preclude recovery of attorneys' fees.  Davy, 550

F.3d at 1160-61; see also Summers, 477 F. Supp. 2d at 69 (ruling, based partly on prior court

ruling that the mere potential of commercial benefit does not tip this factor against recovery of

attorneys' fees, that first and fourth factors outweigh these two factors).  To the contrary, and as

previously mentioned, neither of these factors is dispositive and the Court must balance all four

of the factors discussed above.  Id. at 1159; Ralph Hoar & Assocs., 985 F. Supp. at 9.

Here, the documents sought by Negley from the FBI relate to its investigation of Negley

and his company.  Negley anticipates that the documents, if and when ultimately produced, will

show the Government's interest in his research in photovoltaic cells, which research has the

potential of commercial benefit to him, but also has enormous environmental and other benefit to

the public.  Perhaps more telling, at some point during the pendency of this case, it became clear

to Negley that the purpose of this lawsuit was more than simply obtaining documents responsive

to his FOIA request; rather, the purpose became to uncover the FBI's inadequate records system

and systematic failings in responding to FOIA requests.  Given the enormous benefit from this

case to future FOIA requestors and litigants (which benefit promotes no commercial or private

interest to Negley; to the contrary, he incurred substantial money to obtain those benefits for

others), these factors are neutral in the analysis for an attorneys' fee award.

### 3.    Reasonableness of the FBI's Basis for Withholding

This final criterion considers whether the agency's opposition to disclosure "had a

reasonable basis in law," Davy, 550 F.3d at 1162 (citing Tax Analysts, 965 F.2d at 1096), and

provides, in part, that where the government has unreasonably withheld records, a fee award is

appropriate if the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged

in obdurate behavior."  See Tax Analysts, 965 F.2d at 1097 (citations omitted); Cuneo v.

Rumsfeld, 553 F.2d 1360, 1366 (D.C. Cir. 1977) (internal citation omitted).  In this regard, "[t]he question is not whether [the requestor] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the requestor] filed suit." Davy, 550 F.3d at 1163.

Here, to describe the FBI's conduct as recalcitrant would be an understatement.  In its September 24, 2009 Order, this Court held that "Defendant's pre-lawsuit search was inadequate as a matter of law." Negley, 2009 U.S. Dist. LEXIS 87880, at *12.  Specifically, this Court found that the FBI's "persistent and inexplicable refusal to search at least the dedicated Zy database does not demonstrate a 'good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Id. at *16.  This Court concluded that the FBI's refusal reflected "a distressing active disregard of its obligations under FOIA." Id.

With respect to the FBI's failure to produce File S-1575, despite Negley requesting it back in April 2002, the Court stated that "[t]he FBI's stubborn refusal to turn over this file flies in the face of longstanding principles that favor disclosure in the FOIA context." Id. at *20. Moreover, in denying the FBI's motion for summary judgment and granting Negley's motion, this Court already has ruled that the FBI had no reasonable basis to withhold File S-1575 and, thus, the Court ordered the FBI to produce it within 30 days.

Similarly, this Court took issue with the FBI's failure to conduct a hand search of Serial 3041, which resulted in the production of additional responsive documents, until five years after Negley's initial FOIA request and only after Court Order:  "This extremely tardy disclosure has never been explained." Id.  Finally, referring to the FBI's change in position to produce other

documents from Serial 3041 only after the lawsuit was underway and a Court Order was entered, this Court noted that the FBI "provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions" and that "such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search." Id. Far from a "colorable basis in law", there simply is no justification for the FBI's failure to produce these documents or otherwise properly respond to Negley's FOIA request. See Davy, 550 F.3d at 1163.

This Court's findings and conclusions with respect to the FBI's actions, both in its unreasonable search and refusal to produce responsive documents, demonstrate that the FBI's position was neither correct as a matter of law nor founded on a colorable basis in law. Moreover, given the recalcitrant and obdurate manner in which the FBI conducted itself for the past seven years (one year pre-suit and six years in litigation), as noted by this Court, this final factor weighs heavily in favor of a fee award.

### 4. Negley is entitled to an attorneys' fee award

For the reasons set forth above, and particularly given how much the first and fourth factors weigh in favor of an award, this Court should find that Negley is entitled to a fee award. To the extent, however, that there is any question as to whether these factors weigh in favor for or against an award, the Court previously relied on the following in Judicial Watch, 384 F. Supp. 2d at 169, which also applies, if necessary, to the inquiry here:

> In addition to the four factors just considered, the Court also considers its previous conclusions that [the agency's] initial search was unlawful and egregiously mishandled and that likely responsive documents were destroyed and removed. If the four factors by themselves did not weigh in favor of a fee award, surely [the agency's] past behavior - demonstrating its lack of reasonableness and lack of respect for the FOIA process - would tip the balance in favor of an award.

As things stand, however, the four factors already favor an award and this additional consideration only makes Court more certain in that conclusion.

## II.   THE AWARD REQUESTED IN THIS CASE IS REASONABLE.

The reasonableness of a fee request is determined by the results obtained. Riverside v. Rivera, 477 U.S. 561, 572 (1986). Moreover, the fee amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate, resulting in a lodestar amount. See Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980). In this regard, "[t]he burden is on the applicant to establish that the requested rate is the prevailing community rate, through affidavits and references to fee awards in similar cases." McKenzie v. Kennickell, 645 F. Supp. 437, 444 (D.D.C. 1986) (citation omitted). "Once such a showing has been made, the government bears the burden to go forward with evidence that the rate is erroneous." Id. (citation omitted).

### A.   The Unprecedented Results Alone Justify the Award.

As discussed above, this case has resulted in extraordinary information to the benefit of future FOIA requestors and litigators against the FBI, and in furtherance of the purposes of FOIA. See supra Part I.B.1. These extraordinary results alone justify a fee award.

### B.   The Requested Rates Are Reasonable.

Plaintiff's counsel may be awarded reasonable fees calculated "according to the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895-96 (1984); Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995). In this regard, "an attorney's actual billing rate is highly relevant proof of the prevailing community rate." Laffey v. Northwest Airlines, 572 F. Supp. 354, 373 (D.D.C. 1983) (subsequent history omitted).

In the District of Columbia Circuit, fee awards may be calculated based on the Laffey matrix because, in the absence of a specific sub-market analysis of attorneys' fees, "use of the

broad <u>Laffey</u> matrix may be by default the most accurate evidence of a reasonable hourly rate."
<u>Covington</u>, 57 F.3d at 1114 n.5.  Copies of the relevant <u>Laffey</u> matrices are attached to the
accompanying Declaration of Prashant K. Khetan ("Mr. Khetan's Declaration") as Exhibit A.[7]

In the litigation of this case, undersigned counsel's rates have fluctuated between being
slightly lower, the same as or slightly higher than those permitted under the <u>Laffey</u> matrix – in
other words, the rates charged by Negley's counsel were, on average, on par with what the
<u>Laffey</u> matrix suggests.[8]  For example, between 2003-04, when the <u>Laffey</u> matrix suggested a
rate of $175-225 for an attorney with Mr. Khetan's experience, Mr. Khetan's rates charged were
between $200-210 per hour.  Then, between 2006-08, Mr. Khetan's rate remained at $260 per
hour, while the <u>Laffey</u> matrix suggested a rate of $235-330.  Similarly, between 2002-04, the rate
charged by Mr. Wisenberg remained at $400 per hour, while the <u>Laffey</u> matrix suggested a rate
of $360-390.  Finally, between 2005-07, when the <u>Laffey</u> matrix suggested a rate of $280-390
for an attorney with Mr. Vitrano's experience, Mr. Vitrano's rates charged were between $280-
320 per hour.

---

[7] The "<u>Laffey</u> matrix" or the "United States Attorney's Office matrix" originated from the
hourly rates allowed by the Court in <u>Laffey</u>, 572 F. Supp. 354.  Since then, the District of
Columbia Circuit court has ruled that parties may rely on the updated <u>Laffey</u> matrix prepared by
the United States Attorney's Office as evidence of prevailing market rates for litigation counsel
in the Washington, D.C. area.  See <u>Covington</u>, 57 F.3d at 1105 & n.14.

[8] As noted in Mr. Khetan's Declaration, ¶ 7, over the course of the past seven years
(including the one year pre-suit), there have been many timekeepers that have worked on this
matter, including paralegals and support staff.  However, for matter 000001 (pre-suit through
first summary judgment briefing), Negley seeks attorneys' fees for time spent only by partner
Solomon L. Wisenberg (1980 graduate from law school and former Deputy Independent Counsel
who conducted grand jury questioning of President Bill Clinton in the Whitewater/Lewinsky
Investigation) and then-associate Prashant K. Khetan (2000 graduate from law school); for
matter 000002 (appeal through the present), Negley seeks attorneys' fees for time spent only by
partner Paul C. Vitrano (1995 graduate from law school) and associate/partner (as of 2009) Mr.
Khetan.  In other words, and in an effort to be reasonable and reduce the burden on the Court/
parties, Negley is willing to simply not seek, at the present (but without waiving his rights in the
future), fees for the approximately 50 hours spent by the other timekeepers.

Negley believes that the considerable skill, ingenuity and determination demonstrated on the part of his counsel in prosecuting this case, as evidenced by the extraordinary results obtained, warrant the rates charged by his counsel at all times. Moreover, given that those rates are on par with what the Court considers presumptively reasonable (per the Laffey matrix), Negley has calculated this fee request based on the rates actually charged by his counsel.

**C.      The Extraordinary Time and Effort Devoted by Counsel Justify the Award.**

As previously indicated, Negley seeks an award for attorneys' fees related to time spent only by timekeepers Messrs. Wisenberg, Khetan and Vitrano. Moreover, Negley has reduced from the hours indicated in the "Time Detail by Matter" reports (attached to Mr. Khetan's Declaration as Exhibits B and C) the number of hours spent for time not attributable to this lawsuit (or pre-lawsuit) – approximately $30,000. Based on the rates charged by counsel (which conform with the Laffey matrix), Negley seeks a total of $198,854 in attorneys' fees.

As the Court is well aware, and as the attached declaration demonstrates, Negley's counsel have devoted significant time and effort to pursue this FOIA case over the past six-plus years to obtain a successful grant of partial summary judgment. While not typically allowed in such FOIA cases, Negley's counsel have taken several depositions in this case. In addition, counsel have already briefed two rounds of summary judgment, and an appeal (which was successful), as well as appeared for a Court-ordered mediation and before the Court on numerous occasions. Moreover, undersigned counsel (Mr. Khetan), who has been involved in this matter since the Complaint was filed in 2003, has been routinely frustrated by the dilatory and often wasteful tactics employed by the FBI (as noted by this Court in its September 24, 2009 ruling), thus requiring additional time to strategize with Negley and successfully prosecute this case. The actual number of hours expended, therefore, is quite reasonable, especially considering that

18

Negley's attorneys faced the collective legal resources of the U.S. Attorney's Office (undersigned counsel has lost count of the number of different U.S. Attorneys that have been involved in this case over the span of the past six-plus years) and the FBI.

Moreover, the number of hours expended and fee award sought is reasonable in comparison to other FOIA cases in which fees have been awarded.  For example, in Landmark Legal Foundation v. EPA, which also involved agency misconduct but lasted *only* three years, the fee award stipulated to by the parties was $195,000.  See Stipulation As To Fees and Costs, Civil Action No. 00-2338 (RCL), filed September 24, 2003.  Similarly, in another FOIA case that was litigated for *less than* three years, Center to Prevent Handgun Violence v. Dep't of Treasury, 49 F. Supp. 2d 3 (D.D.C. 1999), the Court ordered the payment of fees in the amount of $180,266.63.  More recently, in Judicial Watch, a case that Negley admits was considerably more time-consuming than the present, the fee award stipulated to by the parties was $842,500. See Stipulation for Settlement of Attorneys' Fees and Litigation Expenses and Dismissal With Prejudice, Civil Action No. 95-133 (RCL), filed June 22, 2007.  Finally, in Davy, a FOIA case that spanned four years and also involved two rounds of dispositive motions, but does not appear to have included depositions or an appeal (unlike the pending case), the parties stipulated to a fee award of $115,000.  See Stipulation of Settlement of Attorney's Fees and Dismissal, Civil Action No. 00-2134 (RJL), filed May 4, 2009.  These fee awards, appropriate in these other FOIA cases, demonstrate that the fee award requested here is reasonable, especially considering the time and expense that was necessary to successfully prosecute this case.

**D.**     **Negley is Entitled to Reimbursement of His Litigation Expenses.**

Through September 2009, Negley has incurred litigation expenses (other than fees of counsel) of $10,040.80.  See Exhibit D attached to Mr. Khetan's Declaration.[9]  As provided under FOIA, these expenses should be awarded to Negley.

**III.     CONCLUSION**

For the foregoing reasons, Negley respectfully requests that the Court enter the attached Order awarding him attorneys' fees in the amount of $198,854 and costs of $10,040.80, for a total award of $208,894.80.

Dated: October 8, 2009                               Respectfully submitted,

                                                     _____
                                                     Prashant K. Khetan, D.C. Bar No. 477636
                                                     TROUTMAN SANDERS, LLP
                                                     401 9th Street, N.W.
                                                     Suite 1000
                                                     Washington, DC  20004-2134
                                                     Tel.: (202) 274-2950
                                                     Fax.: (202) 274-2994

                                                     *Attorneys for Plaintiff*

---

[9] Negley does not seek recovery of all costs indicated in the documents included in Exhibit D to Mr. Khetan's Declaration (*e.g.*, legal research, travel, meals, etc.).  To the contrary, his request for an award for costs relates only to what are typically taxable and recoverable.

## LOCAL RULE 7(m) CERTIFICATE OF COUNSEL

On October 7, 2009, I contacted Michelle Lo, counsel for Defendant Federal Bureau of Investigation, by telephone, to meet and confer and to inquire whether her client would consent to the relief requested herein.  Ms. Lo stated that the motion was premature and, therefore, could not consent to the relief requested.

Prashant K. Khetan