## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES LUTCHER NEGLEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Civil Case No. 03-2126 (GK) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT FOR DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S FAILURE TO COMPLY WITH THE COURT'S SEPTEMBER 24, 2009 ORDER

Enough should be enough.  It has been over eight years since Plaintiff James Lutcher Negley first submitted his request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to Defendant, the Federal Bureau of Investigation ("FBI").  It has been over six years since Negley initiated this lawsuit.  This case has been on appeal once, and through two rounds of summary judgment.  On September 24, 2009, Negley believed that the matter was finally coming to a close; indeed, this Court granted his Motion for Partial Summary Judgment and entered an Order unequivocally requiring the FBI to conduct the searches and produce the documents that the FBI should have accomplished years ago in response to Negley's FOIA request ("the Order").  In so ordering, the Court stated, among other things, that "[the FBI] has provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions.  Such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search."  The Court's Order was clear and unambiguous as to what the FBI had to do, and when it had to do those things – including

search for all documents that reference or relate to Negley in any way within 60 days, and produce all responsive documents within another 30 days - so that the FBI would be in compliance with its obligations under FOIA.

Yet, for reasons that Negley cannot understand, the FBI has again ignored the Court's Order. As set forth below, the FBI unilaterally decided to impose restrictions on its search for and production of responsive documents to Negley. At his deposition on January 28, 2010 (his third deposition in this case), David M. Hardy admitted that despite the Order, the FBI used its own set of guidelines in responding to Negley. Specifically, the FBI chose not to search for and/or produce any documents after 2002, any documents outside of San Francisco, or any administrative files/information, despite being aware of responsive documents/information. Indeed, Mr. Hardy was questioned extensively at his deposition specifically regarding the FBI's clear violation of the Court Order, but Mr. Hardy insisted that the FBI's actions were reasonable because they were based on internal interpretations and guidelines. Negley again raised the FBI's violation of the Court Order with the FBI several weeks after the deposition. Yet, to date, the FBI has done nothing to address its violations of the Court's Order, and those violations continue every day.

Accordingly, Negley respectfully requests that this Court find the FBI in contempt of the September 24, 2009 Order and impose sanctions against the FBI, ordering the FBI to comply with this Court's Order by searching for and producing all documents that reference or relate to Negley in any way within 10 days, with no restrictions imposed by the FBI. Additionally, Negley should be given the opportunity to depose Mr. Hardy, at the FBI's cost, limited to what Negley hopes will be the final search and production in this case. Finally, because some of the work by undersigned counsel will have to be repeated if and when the FBI searches for and

- 2 -

produces <u>all</u> responsive documents, the FBI should be ordered to pay a penalty, including but not

limited to Negley's attorneys' fees associated with the FBI's failure to comply with the

September 24, 2009 Order.[1]

## I.    STATEMENT OF FACTS

On January 16, 2002, Negley submitted a FOIA request to the FBI for "any records about

me maintained at and by the FBI in [the San Francisco] field office [(the "SFFO")]."  Negley's

request was sent specifically to the SFFO, rather then the FBI headquarters, because the FBI

advised Negley that he had to submit a request to a specific field office if he wished to obtain

any documents located at that field office.[2]  In response to being told that there were no

responsive records, Negley field an appeal, noting that documents produced under a prior FOIA

request made specific reference to a Main File number (File Number 149A-SF-106204) (the

"Main File"), which appeared to denote a file containing information about Negley that would be

responsive to his FOIA request.  On April 23, 2002, Negley amended his FOIA request to all

files about him, and File S-1575 in its entirety, regardless of its content.  The FBI's response

admitted that there were records responsive to Negley's FOIA request, but it did not produce any

documents.  Negley once again appealed.  This time the FBI produced 37 documents (12 pages

were redacted) from File No. 149A-SF-106204-S0-3041 ("Serial 3041"), a serial from the Main

File.  Dissatisfied with the FBI's search for and production of documents responsive to Negley's

FOIA request, Negley filed the pending lawsuit to obtain a complete production of agency

records responsive to his FOIA request.

---

[1] Among other fees, the FBI should be ordered to pay for the time spent by counsel in preparing for and taking Mr.
Hardy's deposition, as well as in preparing this motion.  If the Court so orders, Negley will promptly file a
declaration from undersigned counsel attesting to and documenting those fees.

[2] Cf. Maydak v. DOJ, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) ("For records held by a field office of the [FBI] . . . ,
however, you must write directly to that FBI . . . field office address.") (citation omitted).

This lawsuit already has resulted in multiple Court Orders requiring the FBI to produce responsive documents. <u>See</u>, <u>e.g.</u>, Order dated January 8, 2007 ¶ 1. In January 2007, the FBI represented that in addition to the 37 pages produced prior to the lawsuit, the FBI had produced (since the inception of the lawsuit) an additional 9 redacted pages (and one page was withheld in its entirety), and was producing an additional 2 pages, from Serial 3041. <u>See</u> Praecipe dated January 16, 2007 and Notice of Correction to Praecipe dated January 19, 2007. Later, the FBI produced documents from File No. 149A-SF-106204-S0-3865 ("Serial 3865"), another serial from the Main File.

The parties then filed cross-motions for summary judgment. In its ruling on September 24, 2009, this Court denied in its entirety the FBI's Second Motion for Summary Judgment and granted Negley's Motion for Partial Summary Judgment. In so ruling, the Court noted the following:

- "Defendant's persistent and inexplicable refusal to search at least the dedicated Zy database . . . actually reflects a distressing active disregard of its obligations under FOIA."

- With respect to the FBI's repeated failure to produce File S-1575: "The FBI's stubborn refusal to turn over this file flies in the face of longstanding principles that favor disclosure in the FOIA context. This refusal is not the first time the FBI has resisted complying with legal mandates in the course of this litigation."

- Referring to the FBI's initial refusal to produce all responsive documents from Serial 3041, despite Court Order: "Instead of complying with the Court's order and disclosing these documents to Negley, the FBI carved out its own exception

to the clearly worded order and elected to withhold production of these duplicates because nothing in them 'suggested additional information would be revealed.'"

- "[The FBI] has provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions. Such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search."

See Negley v. FBI, 658 F. Supp. 2d 50, 56-60 (D.D.C. 2009).

The Court's accompanying Order provided for, among other things, the following:

- Within 60 days, the FBI must conduct searches of 9 different sources for all documents that relate to or reference Negley in any manner (or, for some sources, explain in sufficient detail its manner of previously conducting a reasonable search).

- Within 90 days, the FBI must produce all responsive documents, along with a Vaughn index for any redactions and/or withholdings.

- Within 90 days, the FBI must produce a detailed affidavit explaining the searches conducted, including all search terms used, and the bases for any redactions and/or withholdings.  Negley may take the deposition of the affiant.

See Order dated September 24, 2009.

Negley credits the FBI with attempting to comply with portions of this Order.  Indeed, following the Court's Order, the FBI searched for and produced some responsive documents and Mr. Hardy submitted his Seventh Declaration.  However, at his deposition, Mr. Hardy confirmed

what Negley suspected – that <u>the FBI knowingly failed to comply with other portions of the Order</u> by imposing limits on its search for and production of responsive documents.

## II.   <u>ARGUMENT</u>

### A.   <u>Standard for Finding a Party in Contempt.</u>

The ability to hold a party in contempt "is essential to . . . the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." <u>Walker v. Ctr. for Food Safety</u>, 667 F. Supp. 2d 133, 136 (D.D.C. 2009) (citations omitted). Indeed, courts employ civil contempt sanctions in order to "coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." <u>Id.</u> (citations omitted). Accordingly, this Court can impose contempt sanctions through an ordinary civil proceeding that does not require a jury or proof beyond a reasonable doubt. <u>Id.</u> In this regard, a party is in contempt of court if it "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." <u>Petties v. District of Columbia</u>, 888 F. Supp. 165, 168 (D.D.C. 1995) (citations omitted).

As the party seeking civil contempt sanctions here, Negley "need only show, by clear and convincing evidence, (1) the existence of a reasonably clear and unambiguous court order and (2) a violation of that order by the defendant." <u>Walker</u>, 667 F. Supp. 2d at 136 (citations omitted). In this regard, civil contempt sanctions can be imposed even if the failure to comply with a court order is unintentional. <u>Id.</u> (citations omitted). As set forth below, the undisputed evidence satisfies the standard to find the FBI in contempt of this Court's Order and, particularly because this is not the first time that the FBI has ignored Court Orders or its obligations under FOIA, this case warrants an imposition of sanctions against the FBI.

B.     **The Court's September 24, 2009 Order is Clear and Unambiguous.**

There is no dispute that an Order was entered on September 24, 2009, granting Negley's

Motion for Partial Summary Judgment.  That Order required the FBI to conduct searches within

60 days of nine different sources "for all documents that relate to or reference Negley in any

manner."  That Order also required the FBI to produce within 90 days all such documents,

including duplicates.  The Order's requirements are clear and unambiguous.

C.     **The FBI Violated the Court's September 24, 2009 Order.**

Despite the clarity of the Order, Mr. Hardy's January 28, 2010 deposition reveals that the

FBI imposed restrictions on search criteria that were in no way provided for by this Court.

Moreover, even when the FBI found responsive documents, it chose not to produce them.  Such

actions are in clear violation of the Order.

First, the FBI violated the Order by limiting its search for, and production of, responsive

documents to documents generated <u>prior</u> to 2002:

> Q     So what did you determine to be Negley's FOIA request?
>
> A     We were to search for any documents relating to him and
> there is a cutoff date of 2002.

<u>See</u> Exhibit A (Deposition of David M. Hardy dated January 28, 2010), at 13; <u>see also</u> <u>id.</u> at 15

(Hardy confirming that the FBI imposed an April 2002 time limitation for the search for and

production of responsive documents in response to the Court's Order).  The Order, however,

contains no such restriction.  When questioned, Mr. Hardy justified this restriction by claiming to

be acting in congruence with established FOIA law, which he interpreted to always permit using

the date of the initial FOIA request (here, April 2002) as the cut-off date for the search for and

production of responsive documents.  <u>See</u> <u>id.</u> at 15-16.  In fact, the law does not support Mr.

Hardy's interpretation.  <u>See, e.g.,</u> <u>Public Citizen v. Dept. of State</u>, 276 F.3d 634 (D.D.C. 2002)

(rejecting agency's argument that the absence of using the date of request as the cut-off date would be an "administrative nightmare," and holding that the State Department's cut-off date was unreasonable "both generally and as applied to its FOIA request").  But see Jefferson v. Bureau of Prisons, 578 F. Supp. 2d 55, 60 (D.D.C. 2008) (holding that time of request cut-off date for search was reasonable because "at the time of the request, both the plaintiff and the FBI knew that the investigation of [the subject of the FOIA request's] conduct had been completed, that his criminal trial also had been concluded, and that he was no longer a BOP employee").  Moreover, where, as here, the initial request was made more than seven years prior to the search and production at issue, it cannot be reasonable to use this self-imposed restriction.  See Negley, 658 F. Supp. 2d at 58 ("Regardless of any policy or conventional operating procedures, it is clear that Plaintiff's requests required Defendant to perform more rigorous searches for responsive documents. Cf. Wiesner v. FBI, 577 F. Supp. 2d 450, 457 (D.D.C. 2008) (taking issue with FBI's "naked reliance on its own procedures" to satisfy its FOIA obligations).").  Indeed, here, Mr. Hardy was aware of responsive documents, but simply chose not to produce them.  See, e.g., Ex. A at 23-24 (Hardy admitting that the FBI located a "190 file" that "relates to James Negley," but that the FBI did not produce it because "it's post 2002"); see also id. at 104 (Hardy admitting that the ICM search revealed five serials with Negley's name, but the FBI did not pursue the production of those serials because "[t]hey are all post 2002").

Similarly, the FBI violated the Order by imposing a geographic limitation on the search for and production of responsive documents.  Although Mr. Hardy at one point asserts that the FBI did not limit its search to San Francisco, he repeatedly notes that the FBI "focused" its search on the files in San Francisco.  See id. at 27.  Indeed, Mr. Hardy admits, in one instance, that the FBI did not search for a particular file number because the number reflected that it was

located in Sacramento. See id. at 108-09. In another instance, Mr. Hardy explicitly states that the FBI searched for and located a responsive Sacramento file, but did not produce it because it was not a San Francisco file:

> Q    Did your search not reveal the Sacramento file?
>
> A    The search did reveal the Sacramento file.
>
> Q    Maybe I'm confused. Why didn't you produce the Sacramento file?
>
> A    Going back to the court order, the court order said in response to Negley's FOIA request which again we were looking for San Francisco documents and these were Sacramento documents and so we did not produce them.
>
> . . .
>
> Q    . . . And the reason you didn't produce the Sacramento file is because those were not San Francisco documents?
>
> A    They were -- his original request was for all documents in San Francisco and he amended it with 1575, and so we did not produce the Sacramento documents because they were not San Francisco documents.

Id. at 86-88.

Finally, the FBI violated the Order by not searching for and/or producing entire files or responsive information because it unilaterally determined that the file(s)/information was not responsive or that Negley would not want it:

- Mr. Hardy stated that the FBI maintains "190" files that are generated whenever an individual makes a FOIA request, and which are searchable using UNI. See id. at 21-22. Each such file contains correspondence between the requestor and the FBI, but also internal FBI e-mail correspondence and search slips. See id. at 22-23. As previously indicated, the FBI did not produce the "190" file relating to Negley's 2002 FOIA request because it took the position that it would not produce any documents after Negley's request was made in 2002. See id. at 23-24. Moreover, later in the deposition, Mr. Hardy indicated that "[a]s a routine matter we do not produce 190 . . . files unless the individual specifically asks for them." See id. at 27-28. This means that the FBI never searched for "190" files related to Negley's prior FOIA requests when it first purported to search for

responsive documents in 2002; those files, according to Mr. Hardy, would now be destroyed because this litigation has spanned more than seven years. See id. at 25-27; see also id. at 83 (after reviewing a specific document that Negley previously obtained, Hardy acknowledging that the "190" file containing that document likely has been destroyed). Thus, Negley will never get those responsive documents because in 2002, Negley did not have the knowledge of the FBI's inner-workings to "specifically ask for them." See id. at 27.

- Similarly, the FBI maintains "197" files for every matter that is in litigation. See id. at 20-21. As with the "190" files, Mr. Hardy indicated that the FBI's policy is not to search for or produce "197" files "unless the individual specifically asks for them." See id. at 27-28. Later, Mr. Hardy admitted that he is aware of two "197s that relate to Mr. Negley[,]" but that the FBI did not produce them. See id. at 37-38.

- Finally, despite having knowledge of warrantless wiretaps and what Hardy referred to as the "President's program," the FBI made no effort to determine where any associated responsive records might be and search for/produce them. See id. at 95-96.

As this Court is aware, the FBI's dereliction of its obligations under FOIA does not originate with the September 24, 2009 Order. Rather, the FBI's conduct over the past seven years has represented a persistent recalcitrance with regard to both FOIA law and Orders of this Court. In its September 24, 2009 Memorandum Opinion, this Court noted that the FBI has "provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions" and that "such an approach undermines the agency's credibility, and does little to promote confidence that the FBI has complied with its statutory obligation to conduct a good faith, reasonable search." Apparently, the FBI has decided to yet again ignore a Court Order and its obligations under FOIA.

## III.   CONCLUSION

For these reasons, Negley respectfully requests that the Court enter the attached Order finding the FBI in contempt of the September 24, 2009 Order and imposing sanctions against the FBI.

Dated: April 5, 2010                              Respectfully submitted,


                                                  /s/ Prashant K. Khetan
                                                  Prashant K. Khetan, D.C. Bar No. 477636
                                                  TROUTMAN SANDERS, LLP
                                                  401 9th Street, N.W.
                                                  Suite 1000
                                                  Washington, DC  20004-2134
                                                  Tel.:  (202) 274-2950
                                                  Fax.:  (202) 274-2994

                                                  *Attorneys for Plaintiff,*
                                                  James Lutcher Negley

## LOCAL RULE 7(m) CERTIFICATE OF COUNSEL

Following David M. Hardy's deposition on January 28, 2010, I had several communications with Michelle Lo, counsel for Defendant Federal Bureau of Investigation, regarding the issues that remained in the case. During these conversations, including a telephonic conversation on February 10, 2010, I conveyed Mr. Negley's belief that the FBI violated the Court's September 24, 2009 Order. This was confirmed upon receipt of the transcript for Mr. Hardy's deposition. Accordingly, I contacted Ms. Lo via telephone on April 2, 2010, to inform her of the basis of the instant motion, as well as Mr. Negley's desire to complete this case that has been pending for nearly six years. Ms. Lo expressed frustration that Mr. Negley did not give the FBI an opportunity to address the purported violations of the Court Order (even though those violations were discussed at Mr. Hardy's deposition and in conversations after the deposition), but would review the motion upon its filing. I exchanged several more emails with Mr. Lo, setting forth in detail the FBI's violations of the Court Order and the remedy sought by Mr. Negley, and advised her that if the FBI did not respond by April 5 at noon, and given the FBI's delay tactics in the past, Mr. Negley would file the instant motion. As of the filing of this motion, undersigned counsel has not heard back from Ms. Lo.

/s/ Prashant K. Khetan
Prashant K. Khetan