**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
JAMES LUTCHER NEGLEY,              :
                                   :
       Plaintiff,                :
                                   :
   v.                          :  Civil Action No. 03-2126 (GK)
                                   :
FEDERAL BUREAU OF                  :
INVESTIGATION,                     :
                                   :
       Defendant.                :
_____:

## MEMORANDUM OPINION

Plaintiff James Lutcher Negley ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is now before the Court on Plaintiff's Motion for Contempt for Defendant Federal Bureau of Investigation's Failure to Comply with the Court's September 24, 2009 Order [Dkt. No. 90].

Upon consideration of the Plaintiff's Motion, Defendant's Opposition, Plaintiff's Reply, the entire record herein, and for the reasons discussed below, Plaintiff's Motion for Contempt is **denied**.

## I. BACKGROUND

### A. Factual Background[1]

This case concerns a FOIA dispute between Negley and the FBI, which has been ongoing for over nine years.[2] On January 16, 2002, Negley submitted a FOIA request to the FBI's San Francisco Field Office ("SFFO") seeking "a copy of any records about [him] maintained at and by the FBI in [the San Francisco] field office." On January 30, 2002, the FBI informed Negley that a search of its Central Records System did not yield any records responsive to his request.

On October 17, 2003, after more than a year and half of proceedings within the FBI, Plaintiff filed this suit. Plaintiff challenged the FBI's compliance with FOIA and sought production of all agency records relating to him from the SFFO. Compl. ¶¶ 1, 19 [Dkt. No. 1].

On August 24, 2007, after several years of litigation regarding the specifics of the FBI's FOIA responsibilities, Plaintiff filed a Motion for Partial Summary Judgment [Dkt. No. 71], arguing that the FBI's search and production of documents were

---

[1] Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute.

[2] This Court's September 24, 2009 Memorandum Opinion contains a full recitation of the case's lengthy factual background. See Negley v. F.B.I., 658 F. Supp. 2d 50, 53-55 (D.D.C. 2009). Therefore, this Memorandum Opinion contains only a summary of the facts directly relevant to Plaintiff's Motion for Contempt.

inadequate as a matter of law, and failed to comply with his FOIA request.[3] Plaintiff argued that "despite his broad request 'for any records about him,' and the existence of nine different sources of searchable records, the FBI's only pre-lawsuit search was of one such source--the Universal Index ('UNI')." Negley, 658 F. Supp. 2d at 56-57 (citations omitted). On the same day, Defendant filed a Second Motion for Summary Judgment on all claims raised by Plaintiff [Dkt. No. 72].

On June 15, 2009, unbeknownst to the Court, Plaintiff submitted a separate, expansive FOIA request to Defendant, seeking "all records in the possession of the Federal Bureau of Investigation relating, in any way, to James Lutcher Negley." Eighth Hardy Decl. ¶ 10, Apr. 22, 2010 [Dkt. No. 103-3]. Neither party informed the Court of Plaintiff's June 2009 request.

---

[3] The Court previously granted Defendant's Motion for Summary Judgment [Dkt. No. 10], finding that Plaintiff's claim was barred by the doctrine of res judicata, and that the FBI's search for records was adequate. Negley v. FBI, No. 04-5348 (D.D.C. July 26, 2004)[Dkt. No. 26]. The Court of Appeals subsequently reversed and remanded the case, concluding that application of res judicata was in error, and that there was sufficient doubt about the adequacy of the FBI's search that summary judgment was not warranted. Negley v. FBI, 169 F. App'x. 591, 593-94 (D.C. Cir. 2006). On remand, this Court ordered Defendant to (1) conduct a search for, and produce, certain documents; (2) provide a Vaughn Index and a detailed affidavit explaining any redactions or withholdings; and (3) allow Plaintiff to take depositions of FBI personnel. Scheduling Order (Feb. 2, 2006) [Dkt. No. 31]. On January 8, 2007, Defendant's Motion for Reconsideration was granted as to all File Numbers except for Sub S0-3041 (Serial 3041). Order, Jan. 8, 2007 [Dkt. No. 43].

On September 24, 2009, this Court granted Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Second Motion for Summary Judgment, finding that the FBI's pre-lawsuit search for responsive documents was inadequate, and that Defendant's production of documents was insufficient. Negley, 658 F. Supp. 2d at 56-61. The Court ordered Defendant to:

(1) "produce File Number 149A-SF-106204-S-1575 in its entirety, along with a Vaughn Index for any redactions and/or withholdings and a detailed affidavit explaining the bases for any redactions and/or withholdings" within 30 days of the date of the Order (by October 26, 2009);

(2) conduct reasonable searches, "in response to Negley's FOIA request, for all documents that relate to or reference Negley in any manner," or specify with sufficient detail the search terms used in its previous searches of certain databases, within 60 days of the date of the Order (by November 23, 2009);[4]

(3) produce "all documents, including duplicates, responsive to Negley's FOIA request," along with a Vaughn Index for any redactions and/or withholdings, within 90 days of the date of the Order (by December 23, 2009); and

(4) make its affiants available for three depositions, limited to: (A) the topics discussed in Hardy's Fifth Declaration (within 30 days of the date of the Order); (B) the affidavit explaining any redactions and/or withholdings from the Vaughn Index for File S-1575 (within 60 days of the date of the Order); and (C) the affidavit explaining the

---

[4] Specifically, Defendant was ordered to conduct a search of (1) the ICM database, using relevant file numbers and dates; (2) the ECF database that "captures at least the 'six-way phonetic breakdown' of Negley's name"; (3) the ELSUR database; (4) the Zy database; (5) the SFFO card index; (6) FBIHQ; and (7) handwritten notes, personal files and restricted files. Order 2-3.

> searches conducted in response to Negley's FOIA request, including all search terms used, and the bases for any redactions and/or withholdings from the Vaughn Index for the documents produced within 90 days of the date of the Order (by December 23, 2009).

Order 1-4, Sept. 24, 2009 (the "September 24, 2009 Order" or "Order") [Dkt. No. 90].

In response to this Order, Defendant took the following actions: (1) On October 22, 2009, Defendant made David M. Hardy available for a deposition on the topics discussed in the Fifth Hardy Declaration. (2) On October 26, 2009, Defendant released to Plaintiff File Number 149A-SF-106204-S-1575, along with a Vaughn Index and the Sixth Declaration of David M. Hardy, Oct. 24, 2009 [Dkt. No. 103-1], explaining the bases for Defendant's redactions and/or withholdings. (3) Defendant conducted the searches specified by the Order,[5] or, where appropriate, specified with sufficient detail the search terms used in its previous searches. The details of these searches were disclosed in the Seventh Declaration of David M. Hardy, Dec. 23, 2009 [Dkt. No. 103-2]. (4) On December 23, 2009, Defendant produced all responsive documents[6] identified in

---

[5] All searches conducted after the issuance of the Court's Order were conducted to locate records responsive to both Plaintiff's 2002 and 2009 FOIA requests. Eighth Hardy Decl. ¶ 14.

[6] The Seventh Hardy Declaration noted that some records located from these searches were not produced to Plaintiff: (1) from the UNI search, "administrative files related to the Plaintiff's prior FOIA/PA requests to other field offices and the FBI's file related

(continued...)

the above searches, along with a <u>Vaughn</u> Index and the Seventh Hardy Declaration, which explained the bases for any redactions and/or withholdings. (5) On January 28, 2010, by agreement of the parties, Plaintiff took the deposition of Hardy on the topics discussed in the Sixth Hardy Declaration and Seventh Hardy Declaration.

On April 5, 2010, Plaintiff filed a Motion for Contempt for Defendant's Failure to Comply with the Court's September 24, 2009 Order ("Pl.'s Mot") [Dkt. No. 102]. On April 22, 2010, Defendant filed its Opposition [Dkt. No. 103]. On May 3, 2010, Plaintiff filed his Reply [Dkt. No. 104].

## II. STANDARD OF REVIEW

There is "no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." <u>Shillitani v. United States</u>, 384 U.S. 364, 370 (1966); <u>see</u> <u>also</u> <u>SEC v. Diversified Growth Corp.</u>, 595 F. Supp. 1159, 1170 (D.D.C.1984) (to coerce obedience of a lawful order is within the court's civil contempt power). Civil contempt is a remedial sanction used to obtain compliance with a court order or to compensate for damages sustained as a result of noncompliance. <u>NLRB v. Blevins Popcorn, Co.</u>, 659 F.2d 1173, 1184 (D.C.Cir. 1981).

---

(...continued)
to this litigation file"; (2) from the ECF search, five serials in which Plaintiff's name appeared in the text. One serial was a litigation file concerning the SFFO, three serials were from Plaintiff's prior FOIA/PA requests to the Miami, Los Angeles, and San Antonio field offices, and the fifth serial did not concern Plaintiff. Seventh Hardy Decl. ¶ 39(b).

In order to establish that Defendant is in contempt, Plaintiff must demonstrate "by clear and convincing evidence, (1) the existence of a reasonably clear and unambiguous court order and (2) a violation of that order by the defendant." Walker v. Ctr. for Food Safety, 667 F. Supp. 2d 133, 136 (D.D.C. 2009) (citing Broderick v. Donaldson, 437 F.3d 1226, 1234 (D.C. Cir. 2006)). In finding a party to be in civil contempt of a court's order, "the intent of the recalcitrant party is irrelevant," and the court must only determine whether its order has been violated. Blevins Popcorn, 659 F.2d at 1184, 1186 n. 77.

## III. ANALYSIS

Neither party contests that the Court's Order was reasonably clear and unambiguous. Pl.'s Mot. 7 ("The Order's requirements are clear and unambiguous."); Def.'s Opp'n 11 ("FBI has reasonably interpreted Court's September 24, 2009 Order and has complied in good faith with its terms."). The parties dispute only whether the FBI violated the Order. Walker, 667 F. Supp. 2d at 136.

The disagreement between Plaintiff and Defendant concerns the scope of the September 24, 2009 Order. Plaintiff contends that the FBI violated the Order because it chose "not to search for and/or produce any documents after 2002, any documents outside of San Francisco or any administrative files/information, despite being aware of responsive documents/information." Pl.'s Mot. 2. Defendant responds that it limited the temporal and geographical scope of its

-7-

searches because it needed only to search for records responsive to Plaintiff's 2002 FOIA request. Def.'s Opp'n 2. Further, the FBI contends that it did not need to produce administrative files unresponsive to the 2002 FOIA request. Id. The extent to which the FBI complied with the Order therefore turns on whether the Order's instructions related only to the 2002 FOIA request or to documents created more recently.

**A. The Clear and Unambiguous Language of the Court's September 24, 2009 Order Required Defendant to Produce Documents Responsive to Plaintiff's 2002 FOIA Request.**

The Court's September 24, 2009 Order required the FBI to conduct searches and produce documents "in response to Negley's FOIA request." Order 2-3. At the time the Order was issued, the Court had notice only of Negley's 2002 FOIA request and not of his June 15, 2009 FOIA request. Therefore, when the Order referenced "Negley's FOIA request," the Court referred only to the request that Negley made in 2002. Id. Indeed, Plaintiff concedes that the 2009 FOIA request "is unrelated to this litigation and the Court Order, which deals with Negley's FOIA request that began in January 2002." Pl.'s Reply 2. Defendant's obligations under the Order were to search for and produce documents "responsive to Negley's [2002] FOIA request." Order 2-3.

Plaintiff argues that the Order's language, "for all documents that relate to or reference Negley in any manner," broadened the scope of the Order beyond the temporal and geographic limitations

of his 2002 FOIA request. Pl.'s Reply 1; Order 2. The interpretation advanced by Plaintiff, that the "Court's Order requir[es] production of <u>all</u> documents that relate to or reference Negley in <u>any</u> manner," is unconvincing for two reasons. Pl.'s Reply 1 (emphasis added).

First, the phrase "in response to Negley's FOIA request" preceeded and limited the command, "Defendant must conduct reasonable searches . . . for all documents that relate to or reference Negley in any manner." Order 2. As noted above, the Order could not have been referring to Plaintiff's expansive 2009 FOIA request, as the Court had not been given notice of this request by either party at the time that it issued the Order. The Court could hardly order the FBI to comply with a FOIA request that the Court did not even know about.

Second, even if the Court had intended to expand upon Plaintiff's 2002 FOIA request to include "all documents that relate to or reference Negley in any manner," this expansive language applied only to the provision in the Order that related to <u>searches</u>. Order 2. A separate provision in the Order gave instructions to the FBI as relating to the <u>production of documents</u>. Order 3. The production provision of the Order only addressed documents that were, in no uncertain terms, "responsive to Negley's [2002] FOIA request." Order 3. With regard to production, the Order only required Defendant to produce documents that were directly

responsive to Negley's 2002 FOIA request, which were limited to those "maintained at and by the FBI [SFFO]." Compl. Ex. A.

Consequently, the reasonably clear and unambiguous language of the Court's Order limited Defendant's searches and production of documents to those that were specified in Plaintiff's 2002 FOIA request, which asked for documents "maintained at and by the FBI [SFFO]," and which existed at the time of Plaintiff's 2002 request. Compl. Ex. A.

### B. Defendant Did Not Violate the Court's September 24, 2009 Order.

Plaintiff argues that Defendant should be held in contempt because it "chose not to search for and/or produce any documents after 2002, any documents outside of San Francisco, or any administrative files/information, despite being aware of responsive documents/information."[7] Pl.'s Mot. 2. Defendant responds that "in compliance with the Court's Order directing the FBI to conduct searches in response to Negley's FOIA request, the FBI appropriately searched for and released records about [Plaintiff] maintained at and by the FBI in [the San Francisco] field office." Def.'s Opp'n 13 (internal quotation omitted). As explained above, Defendant's legal obligation was only to search for and produce

---

[7] In fact, the FBI did not impose any geographical restrictions on its searches in response to the September 24, 2009 Order. Hardy Dep. 18:6-14, Jan. 28, 2010 [Dkt. No. 103-4].

specific documents identified in the Order and documents responsive to Plaintiff's 2002 FOIA request.

In complying with a FOIA request, an agency is not required to search for records which are beyond the scope of the original request. See Williams v. Ashcroft, 30 F. App'x 5, 6 (D.C. Cir. 2002) (holding that the Bureau of Prisons was "not required to search for or provide tape recordings . . . because [appellant] did not include these materials in his initial FOIA request"); Kowalczyk v. Dep't. of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996) ("[The agency] is not obliged to look beyond the four corners of the request for leads to the location of responsive documents."). Moreover, FOIA "does not require agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created or retained." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980); see also Schoenman v. FBI, No. 04-2202, 2009 WL 763065, at *18 (D.D.C. Mar. 19, 2009) (holding that the plaintiff was not entitled to documents that were "created during the course of searching for records responsive to Plaintiff's FOIA/PA Request"). In sum, an agency does not violate its FOIA obligations if it fails to produce administrative documents which have been created as a direct result of responding to the request itself.

As Plaintiff concedes, Defendant searched for those documents related to him which were generated until the time of the 2002 FOIA

request and were located in the San Francisco Field Office.[8] Pl.'s Mot. 7-9. That is, Defendant searched for documents "in response to Negley's FOIA request." Order 2-3. Defendant's assumption that Plaintiff's 2002 request was limited to documents in existence at the time of his request and within the scope of the request was eminently reasonable. See Jefferson v. Bureau of Prisons, 578 F. Supp. 2d 55, 60 (D.D.C. 2008) (holding that it was "reasonable in this instance for the agency to conclude that the information requested would have pre-dated, not post-dated the FOIA request"); see also Kowalczyk, 73 F.3d at 388 ("A reasonable effort to satisfy [Plaintiff's initial] request does not entail an obligation to search anew based upon a subsequent clarification.").

Plaintiff relies on Public Citizen v. Dep't of State, 275 F.3d 634, 643 (D.C. Cir. 2002), for his claim that the FBI's decision not to produce documents created after 2002 was unreasonable. Pl.'s Mot. 7-8. Plaintiff's reliance is misplaced. Public Citizen held only that the "reflexive application of the date-of-request cut-off policy to all FOIA requests is unreasonable" and emphasized that "nothing in this opinion precludes . . . [a] federal agency from attempting a more compelling justification for imposing a date-of-request cut-off on a particular FOIA request." 274 F.3d at 642, 644

---

[8] Defendant points out that the FBI's cut-off date was actually the date of its initial search in response to Plaintiff's 2002 request, and not the date of the request itself. Def.'s Opp'n 14; Hardy Dep. 15:20-16:5.

(emphasis in original); see Jefferson, 578 F. Supp. 2d at 60 ("Public Citizen reiterates the second rule of McGehee, rejecting a proposition that a cut-off date tied to the date of request is per se reasonable regardless of the circumstances or nature of the request."). Here, it was reasonable for the FBI to use a cut-off date of April 2002, when it was aware that it would also have to respond to Plaintiff's broader 2009 FOIA request. Def.'s Opp'n 15; see also Jefferson, 578 F. Supp. 2d at 60 ("the proper question here is whether the cut-off date used was reasonable in light of the specific request Plaintiff made.").

With respect to production of documents, the FBI produced to Plaintiff all documents responsive to the 2002 FOIA request. The "only records discovered that had not previously been released to Plaintiff were 'administrative' type files that were deemed unresponsive to Plaintiff's 2002 FOIA request in that they were created in the process of responding to his request and/or related to field offices other than San Francisco."[9] Def.'s Opp'n 2. Specifically, the documents that were not produced to Plaintiff included: (1) "administrative files related to the Plaintiff's prior FOIA/PA requests to other field offices and the FBI's file

---

[9] Defendant states that "in the course of responding to Plaintiff's 2009 FOIA request, the FBI asked the Plaintiff on two occasions whether he wished to receive [administrative type] records . . . and Plaintiff twice refused to provide any response whatsoever." Def.'s Opp'n 3. Defendant "is currently collecting them for processing and release" anyhow. Id.; Eighth Hardy Decl. ¶ 22.

related to this litigation file," which were all created post-2002; (2) a Sacramento field office file; and (3) five serials in which Plaintiff's name appeared in the text. Seventh Hardy Decl. ¶ 39; Def.'s Opp'n 7. Three of the five serials were from Plaintiff's prior FOIA/PA requests made to the Miami, Los Angeles, and San Antonio field offices, and thus were not files maintained at or by the FBI SFFO. Seventh Hardy Decl. ¶ 39(b). The fourth serial was found not to concern Plaintiff. Id.; Hardy Dep. 104:21-107:1. The fifth serial, while it was created by the SFFO, was a litigation file that was created as a result of the Plaintiff's litigation in this matter. Seventh Hardy Decl. ¶ 39(b); Hardy Dep. 104:5-20.

Defendant correctly argues that none of these files or serials were responsive to Plaintiff's 2002 FOIA request, either because they were not maintained at or by the SFFO, or because they were created after, and as a direct result of, Plaintiff's 2002 request. The "administrative" or "190" files are "generated when [a requestor] make[s] a FOIA request, and then the subsequent releases are in it and correspondence is in it for the request." Hardy Dep. 21:1-12. The "litigation" or "197" files are "record[s] [that are] generated during the course of a civil litigation." Hardy Dep. 37:8-18. The FBI did not produce these records because they were deemed unresponsive to Plaintiff's 2002 FOIA request. Schoenman, 2009 WL 763065, at *18 (plaintiff not entitled to documents

"created during the course of searching for records responsive to Plaintiff's FOIA/PA Request").

Because Defendant searched for and produced all documents responsive to Plaintiff's 2002 FOIA request and required by the September 24, 2009 Order, Defendant has not violated this Court's reasonably clear and unambiguous Order.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Contempt is **denied.**

March 1, 2011

/s/
Gladys Kessler
U.S. District Court Judge

Copies to: Attorneys of record via ECF.