```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
JAMES LUTCHER NEGLEY,        )
                             )
        Plaintiff,           )
                             )
    v.                       )   Civil Action No. 03-2126 (GK)
                             )
                             )
FEDERAL BUREAU               )
OF INVESTIGATION,            )
                             )
        Defendant.           )
_____ )
```

### MEMORANDUM OPINION

Plaintiff James Luther Negley ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is before the Court on Plaintiff's Motion for Reconsideration [Dkt. No. 111]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Reconsideration is **denied**.

**I.   BACKGROUND**[1]

This case concerns a FOIA dispute between Negley and the FBI which has been ongoing for over nine years. On January 16, 2002,

---

[1] The facts set forth herein are a summary of facts directly relevant to Plaintiff's Motion for Reconsideration drawn, unless otherwise noted, from the facts set out in this Court's March 1, 2011, Memorandum Opinion. See Negley v. F.B.I., 766 F. Supp. 2d 190 (D.D.C. 2011). This Court's September 24, 2009, Memorandum Opinion contains a more fulsome recitation of the case's lengthy factual background. See Negley v. F.B.I., 658 F. Supp. 2d 50, 53-55 (D.D.C. 2009).

Plaintiff submitted a FOIA request ("2002 FOIA request") to the FBI's San Francisco Field Office ("SFFO") seeking "a copy of any records about [him] maintained at and by the FBI in [the San Francisco] field office." On August 24, 2007, after several years of litigation regarding the specifics of the FBI's FOIA responsibilities, Plaintiff filed a Motion for Partial Summary Judgment [Dkt. No. 71], arguing that Defendant's search and production of documents were inadequate as a matter of law, and failed to comply with his FOIA request. On the same day, Defendant filed a Second Motion for Summary Judgment on all claims raised by Plaintiff [Dkt. No. 72].

On June 15, 2009, unbeknownst to the Court, Plaintiff submitted a separate, expansive FOIA request ("2009 FOIA request") to Defendant, seeking "all records in the possession of the Federal Bureau of Investigation relating, in any way, to James Lutcher Negley." Eighth Hardy Decl. ¶ 10, Apr. 22, 2010 [Dkt. No. 103-3]. Neither party informed the Court of Plaintiff's June 2009 request.

On September 24, 2009, this Court granted Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Second Motion for Summary Judgment, finding that Defendant's search for responsive documents was inadequate, and that Defendant's production of documents was insufficient. Negley v. FBI, 658 F. Supp. 2d 50, 56-61 (D.D.C. 2009). The Court entered a very detailed Order, requiring Defendant to conduct certain searches, produce

material to Plaintiff, and make its affiants available for deposition, all to satisfy Plaintiff's 2002 FOIA request. Order 1-4, Sept. 24, 2009 (the "September 24, 2009, Order") [Dkt. No. 90]. Over the following several months, Defendant took steps to comply with the September 24, 2009, Order.

On April 5, 2010, Plaintiff filed a Motion for Contempt for Defendant's Failure to Comply with the Court's September 24, 2009, Order ("Pl.'s Mot. for Contempt") [Dkt. No. 102]. On March 1, 2011, this Court denied Plaintiff's motion, finding that the FBI searched for and produced all documents responsive to Plaintiff's 2002 FOIA request and required by the Court's "reasonably clear and unambiguous" September 24, 2009, Order. Negley v. F.B.I., 766 F. Supp. 2d 190, 196 (D.D.C. 2011) (hereinafter "March 1, 2011, Opinion" or "Opinion").

Subsequently, on March 9, 2011, Plaintiff filed the pending Motion for Reconsideration ("Pl.'s Mot.") of the March 1, 2011, Order denying Plaintiff's motion for contempt. On March 25, 2011, Defendant filed its Opposition ("Def.'s Opp'n") [Dkt. No. 113]. On April 1, 2011, Plaintiff filed his Reply [Dkt. No. 114].

**II. STANDARD OF REVIEW**

A district court may revise its own interlocutory decisions "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A motion for reconsideration of a contempt motion against

a party to the dispute is properly considered under Rule 54(b). See S.E.C. v. Bilzerian, 729 F. Supp. 2d 9, 12-13 (D.D.C. 2010) ("[C]ourts usually analyze motions for reconsideration of civil contempt orders under Rule 54(b) . . . .").

Rule 54(b) permits the district court to reconsider an interlocutory order "as justice requires." Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citing Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). The term "'[a]s justice requires' indicates concrete considerations" by the court, Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008), such as "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." In Def. of Animals v. Nat'l Inst. of Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and quotation marks omitted).

"Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." Id. at 76. The court's discretion under 54(b) is "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Singh, 383 F. Supp. 2d at 101 (internal citations omitted).

## III. ANALYSIS

Plaintiff urges the Court to reconsider its March 1, 2011, Opinion denying his motion for contempt. Plaintiff does not rely on any newly discovered evidence or changes in the law to support his Motion. Instead, Plaintiff argues that the Court (1) "mischaracterizes Negley's 2002 FOIA request as seeking documents only maintained at and by the San Francisco Field Office," and (2) "misunderstand[s]" the effect of Negley's 2009 FOIA request. Pl.'s Mot. 1-2, 4. In essence, Plaintiff seeks to have this Court reconsider the geographic scope of his 2002 FOIA request and the reasonableness of Defendant's use of an April 2002 cut-off date for production of documents responsive to that request. Plaintiff's arguments are considered in turn.

### A. Plaintiff's Motion for Reconsideration of the Geographic Scope of Plaintiff's 2002 FOIA Request Is Denied.

Plaintiff's 2002 FOIA request sought "any records about [him] maintained at and by the FBI in [the San Francisco] field office." Negley, 766 F. Supp. 2d at 191. Plaintiff included the language specifying the relevant field office because he was informed that FBI protocol requires that FOIA requests be directed to specific offices. Pl.'s Mot. 1. As the Court has previously noted, because it was not aware of Plaintiff's 2009 FOIA request at the time of its September 24, 2009, Order, that Order "referred only to the request that Negley made in 2002." Negley, 766 F. Supp. 2d at 194 (emphasis in original). Plaintiff now asserts that the scope of

this request was expanded to include records outside of the SFFO, and that Defendant "violate[d] the September 24, 2009 Order by producing documents only maintained at and by the SFFO." Pl.'s Mot. 1-2.

Plaintiff states that he sent an amendment to his original 2002 FOIA request to the SFFO on April 23, 2002, id. at 2, which stated in part: "Please amend my 1/16/2002 FOIA request to your office to include . . . file no. [S-1575] as well as any others." Id., Ex. A. Plaintiff argues that "unlike the initial [2002 FOIA request] to the SFFO, [Plaintiff's amended request] does not contain any geographic limitation." Id. at 2.

The plain and logical reading of the amended request is that "any others" refers to other file numbers at the SFFO office.[2] This is especially apparent in light of Plaintiff's understanding that "FBI protocol required that he make a FOIA request directly to a field office" to request any records from that office.[3] See id. at

---

[2] Plaintiff has previously stated that his only intention for amending his 2002 request was to supplement his request for files at the SFFO with a specific request for File S-1575. Under oath, Plaintiff declared, "To the extent that there is any ambiguity in the language of my April 23, 2002 correspondence to the FBI, it was and still is my intent to amend my FOIA request to include, in addition to all files about me at the SFFO, the entire File No. S-1575, regardless of whether or not that file is about me." Supp. Negley Decl. ¶ 3, Feb. 8, 2007 [Dkt. No. 71-3].

[3] Indeed, Plaintiff further manifested this understanding by contacting other field offices directly when he sought files maintained at and by those offices. See Negley, 658 F. Supp. 2d at 53 (request sent to Sacramento); Negley, 766 F. Supp. 2d at 193 n.6
(continued...)

2 & n.1 (citing Maydak v. Dep't of Justice, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) ("For records held by a field office of the [FBI] ..., however, you must write directly to that ... field office address.") (citation omitted)).

In sum, this Court has already considered and determined the scope of Plaintiff's 2002 FOIA request, and nothing in Plaintiff's motion or reply changes the Court's prior analysis. See Negley, 766 F. Supp. 2d at 194-95.

**B. Plaintiff's Motion for Reconsideration of the Reasonableness of Defendant's Cut-off Date for Responsive Documents Is Denied.**

Next, Plaintiff asserts that the Court erred when it "held that 'it was reasonable for the FBI to use a cut-off date [for production of responsive documents] of April 2002.'" See Pl.'s Mot. 4 (quoting Negley, 766 F. Supp. 2d at 196). As is well established, a motion for reconsideration is not an opportunity to reargue facts and theories upon which the court has already ruled, or present theories or arguments that could have been advanced earlier. Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011).[4]

---

[3](...continued)
(requests sent to Miami, Los Angeles, and San Antonio). Defendant, meanwhile, was aware of Plaintiff's requests to other offices. See, e.g., Seventh Hard Decl. ¶ 39(b).

[4] Plaintiff cites to one additional case in support of his claim that Defendant's use of a cut-off date earlier than the issuance of the Court's September 24, 2009, Order is "virtually per
(continued...)

This Court has already considered and determined the reasonableness of Defendant's choice of cut-off dates. See Negley, 766 F. Supp. 2d at 194-96. The Court held that, under the circumstances of this case, "it was reasonable for the FBI to use a cut-off date of April 2002, when it was aware that it would also have to respond to Plaintiff's broader 2009 FOIA request." Id. at 196; see also Public Citizen v. Dep't of State, 276 F.3d 634, 644 (D.C. Cir. 2002) ("nothing in this opinion precludes . . . [a] federal agency from attempting a more compelling justification for imposing a date-of-request cut-off on a particular FOIA request."); McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1103 (D.C. Cir. 1983) (courts must "turn to the particular facts of the case . . . to assess the reasonableness of the agency's conduct."); Jefferson v. Bureau of Prisons, 578 F. Supp. 2d 55, 60 (D.D.C. 2008) ("the proper question here is whether the cut-off date used was reasonable in light of the specific request Plaintiff made.").

---

⁴(...continued)
se unreasonable." See Pl.'s Mot. 5-6. However, Plaintiff's reliance on Wilderness Society v. U.S. Bureau of Land Management, No. Civ. A. 01CV2210, 2003 WL 255971 (D.D.C. Feb. 4, 2003) is unavailing. There, the district court stated that "the agency would have a heavy, if not impossible, burden to justify conducting its renewed search subject to a time limitation based upon the date of plaintiff's initial request." See Wilderness Soc'y, 2003 WL 255971, at *7 n.18. However Defendant correctly notes that in this case, unlike in Wilderness Society, the Plaintiff submitted a subsequent 2009 FOIA request for a broader set of documents. See Def.'s Opp'n 7. Moreover, after issuance of the Court's September 24, 2009, Order, Defendant responded by conducting searches designed to locate records responsive to both the 2002 and 2009 FOIA requests. Id. at 6.

The Court notes that under other circumstances Defendant's decision to impose a cut-off date so far in the past might well have been deemed improper. Here, however, Defendant reasonably imposed its 2002 cut-off because it was also preparing to produce documents responsive to a much broader FOIA request, which entirely encompassed any post-April 2002 SFFO documents responsive to the 2002 request. Negley, 766 F. Supp. 2d at 196. Plaintiff has offered no new evidence, law, or argument to reverse the Court's prior analysis.

Furthermore, Plaintiff has not suffered an injustice from the use of the 2002 cut-off date. See Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005) ("In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused."). As Defendant has pointed out, its renewed search for documents responsive to both Plaintiff's 2002 and 2009 FOIA requests found that all documents responsive to the 2002 FOIA request, even apart from the April 2002 cut-off date, had already been released. See Eighth Hardy Decl. ¶ 14. Plaintiff never addresses this fact.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reconsideration is **denied**.

August 31, 2011

/s/
Gladys Kessler
U.S. District Court Judge

Copies to: Attorneys of record via ECF.