**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES LUTCHER NEGLEY,** | : |
| Plaintiff, | : |
| v. | : Civil Action No. 03-2126 (GK) |
| **FEDERAL BUREAU OF INVESTIGATION,** | : |
| Defendant. | : |

## MEMORANDUM OPINION

Plaintiff James Lutcher Negley ("Plaintiff"), brings this action against Defendant, Federal Bureau of Investigation ("FBI" or "Defendant"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This matter is now before the Court on Plaintiff's Motion for Summary Judgment [Dkt. No. 112] and Defendant's Motion for Summary Judgment [Dkt. No. 116].

Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and for the reasons discussed below, Plaintiff's Motion for Summary Judgment is **denied** and Defendant's Motion for Summary Judgment is **granted.**

However, the FBI should take no comfort in prevailing on its Motion for Summary Judgment. It has taken almost 10 years for Mr. Negley to get the documents to which he is legally entitled under FOIA. The FBI has stonewalled, has delayed, has repeatedly "found" responsive documents long after it should have, and has on numerous occasions failed to meet its obligations under FOIA. This conduct

has forced this Court and Plaintiff (to say nothing of the FBI itself) to expend substantial resources to force the FBI to meet its statutory obligations. The fact that, after almost 10 years, the FBI has--<u>finally</u>--"gotten it right" is a tribute to the persistence, patience, and diligence of Mr. Negley and his counsel. Indeed, this case is a sad example of how a federal agency can delay, and almost succeed, in avoiding compliance with one of this nation's most important statutes.[1]

## I. BACKGROUND[2]

This case concerns a FOIA dispute between Negley and the FBI, which has been ongoing for over nine years. On January 16, 2002, Negley submitted a FOIA request to the FBI's San Francisco Field Office ("SFFO") seeking "a copy of any records about [him] maintained at and by the FBI in [the San Francisco] field office." On January 30, 2002, the FBI informed Negley that a search of its Central Records System did not yield any records responsive to his request.

On October 17, 2003, after more than a year and a half of waiting without any substantive response from the FBI, Plaintiff

---

[1] For these reasons, the Court understands the frustration voiced in Plaintiff's most recent pleadings. While there is much intemperate language and sarcasm in his latest round of pleadings, of which the Court would ordinarily disapprove, there is ample justification for them.

[2] Unless otherwise noted, the facts set forth herein are drawn from parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h).

filed this suit. Plaintiff challenged the FBI's compliance with FOIA and sought production of all agency records relating to him from the SFFO. Compl. ¶¶ 1, 19 [Dkt. No. 1].

On August 24, 2007, after several years of litigation regarding the specifics of the FBI's FOIA responsibilities, Plaintiff filed a Motion for Partial Summary Judgment [Dkt. No. 71], arguing that the FBI's search and production of documents were inadequate as a matter of law, and failed to comply with his FOIA request.[3] Plaintiff argued that "despite his broad request 'for any records about him,' and the existence of nine different sources of searchable records, the FBI's only pre-lawsuit search was of one such source--the Universal Index ('UNI')." Negley v. FBI, 658 F. Supp. 2d 50, 56-57 (D.D.C. 2009) (citations omitted). On the same day, Defendant filed a Second Motion for Summary Judgment on all claims raised by Plaintiff [Dkt. No. 72].

---

[3] The Court previously granted Defendant's Motion for Summary Judgment [Dkt. No. 10], finding that Plaintiff's claim was barred by the doctrine of res judicata, and that the FBI's search for records was adequate. Negley v. FBI, No. 04-5348 (D.D.C. July 26, 2004)[Dkt. No. 26]. The Court of Appeals subsequently reversed and remanded the case, concluding that application of res judicata was in error, and that there was sufficient doubt about the adequacy of the FBI's search that summary judgment was not warranted. Negley v. FBI, 169 F. App'x. 591, 593-94 (D.C. Cir. 2006). On remand, this Court ordered Defendant to (1) conduct a search for, and produce, certain documents; (2) provide a Vaughn Index and a detailed affidavit explaining any redactions or withholdings; and (3) allow Plaintiff to take depositions of FBI personnel. Scheduling Order (Feb. 2, 2006) [Dkt. No. 31]. On January 8, 2007, Defendant's Motion for Reconsideration was granted as to all File Numbers except for Sub S0-3041 (Serial 3041). Order, Jan. 8, 2007 [Dkt. No. 43].

On June 15, 2009, unbeknownst to the Court, Plaintiff submitted a separate, expansive FOIA request to Defendant, seeking "all records in the possession of the Federal Bureau of Investigation relating, in any way, to James Lutcher Negley." Eighth Hardy Decl. ¶ 10, Apr. 22, 2010 [Dkt. No. 103-3]. Neither party informed the Court of Plaintiff's June 2009 request.

On September 24, 2009, this Court granted Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Second Motion for Summary Judgment, finding that the FBI's search for responsive documents was inadequate, and that Defendant's production of documents was insufficient. Negley, 658 F. Supp. 2d at 56-61. The Court ordered Defendant to:

(1) "produce File Number 149A-SF-106204-S-1575 in its entirety, along with a Vaughn Index for any redactions and/or withholdings and a detailed affidavit explaining the bases for any redactions and/or withholdings" within 30 days of the date of the Order (by October 26, 2009);

(2) conduct reasonable searches, "in response to Negley's FOIA request, for all documents that relate to or reference Negley in any manner," or specify with sufficient detail the search terms used in its previous searches of certain databases, within 60 days of the date of the Order (by November 23, 2009);[4]

---

[4] Specifically, Defendant was ordered to conduct a search of (1) the ICM database, using relevant file numbers and dates; (2) the ECF database that "captures at least the 'six-way phonetic breakdown' of Negley's name"; (3) the ELSUR database; (4) the Zy database; (5) the SFFO card index; (6) FBIHQ; and (7) handwritten notes, personal files and restricted files. Order 2-3, Sept. 24, 2009.

(3) produce "all documents, including duplicates, responsive to Negley's FOIA request," along with a <u>Vaughn</u> Index for any redactions and/or withholdings, within 90 days of the date of the Order (by December 23, 2009); and

(4) make its affiants available for three depositions, limited to: (A) the topics discussed in Hardy's Fifth Declaration (within 30 days of the date of the Order); (B) the affidavit explaining any redactions and/or withholdings from the <u>Vaughn</u> Index for File S-1575 (within 60 days of the date of the Order); and (C) the affidavit explaining the searches conducted in response to Negley's FOIA request, including all search terms used, and the bases for any redactions and/or withholdings from the <u>Vaughn</u> Index for the documents produced within 90 days of the date of the Order (by December 23, 2009).

Order 1-4, Sept. 24, 2009 (the "September 24, 2009, Order") [Dkt. No. 90].

In response to this Order, Defendant took the following actions: (1) on October 22, 2009, Defendant made David M. Hardy available for a deposition on the topics discussed in the Fifth Hardy Declaration; (2) on October 26, 2009, Defendant released to Plaintiff File Number 149A-SF-106204-S-1575, along with a <u>Vaughn</u> Index and the Sixth Declaration of David M. Hardy, Oct. 24, 2009 [Dkt. No. 103-1], explaining the bases for Defendant's redactions and/or withholdings; (3) Defendant conducted the searches specified by the Order, or, where appropriate, specified with sufficient detail the search terms used in its previous searches, the details of which were disclosed in the Seventh Declaration of David M. Hardy, Dec. 23, 2009 [Dkt. No. 103-2]; (4) on December 23, 2009,

Defendant produced all responsive documents[5] identified in the above searches, along with a Vaughn Index and the Seventh Hardy Declaration, which explained the bases for any redactions and/or withholdings; and (5) on January 28, 2010, by agreement of the parties, Plaintiff took the deposition of Hardy on the topics discussed in the Sixth Hardy Declaration and Seventh Hardy Declaration.

All searches conducted after the issuance of the Court's September 24, 2009, Order were conducted to locate records responsive to both Plaintiff's 2002 and 2009 FOIA requests. However, the searches conducted pursuant to Plaintiff's 2009 request did not locate any responsive "investigatory" records that had not previously been released. The searches did locate "administrative" files, which are not typically produced because most requesters do not want a copy of their own request or want to pay for these files. The FBI subsequently sent Plaintiff two letters inquiring as to whether he would like to receive these files, and the FBI never received any clear response.

---

[5] The Seventh Hardy Declaration noted that some records located from these searches were not produced to Plaintiff: (1) from the UNI search, "administrative files related to the Plaintiff's prior FOIA/PA requests to other field offices and the FBI's file related to this litigation file"; (2) from the ECF search, five serials in which Plaintiff's name appeared in the text. One serial was a litigation file concerning the SFFO, three serials were from Plaintiff's prior FOIA/PA requests to the Miami, Los Angeles, and San Antonio field offices, and the fifth serial did not concern Plaintiff. Seventh Hardy Decl. ¶ 39(b).

On April 5, 2010, Plaintiff filed a Motion for Contempt for Defendant's Failure to Comply with the Court's September 24, 2009, Order [Dkt. No. 102]. On March 1, 2011, this Court denied Plaintiff's Motion for Contempt, finding that Defendant did not violate the Court's "reasonably clear and unambiguous order." Negley v. FBI, 766 F. Supp. 2d 190, 196 (D.D.C. 2011). On March 9, 2011, Plaintiff filed a Motion for Reconsideration of that ruling [Dkt. No. 111], which is the subject of a separate Order and Memorandum Opinion accompanying this Order and Memorandum Opinion.

On March 15, 2011, Plaintiff filed the pending Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. No. 112]. On May 2, 2011, Defendant filed its Opposition and Cross-Motion for Summary Judgment ("Def.'s Mot.") [Dkt. Nos. 116-117]. On June 1, 2011, Plaintiff filed his Opposition and Reply [Dkt. Nos. 118-119]. On July 1, 2011, Defendant filed its Reply [Dkt. No. 121].

**II. STANDARD OF REVIEW**

FOIA cases are typically and appropriately decided on motions for summary judgment. Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d 123, 130 (D.D.C. 2011); Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "The standard governing a grant of summary judgment in favor of an agency's claim that it has fully discharged its disclosure obligations under FOIA is well-established . . . . [T]he agency bears the burden of showing that

there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983); see also Fed. R. Civ. P. 56(c).

The court may award summary judgment solely on the basis of "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

If the agency withholds any material on the basis of statutory exemptions, the agency's affidavits must also (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" and (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and must not be (3) "controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III. ANALYSIS

The outstanding disputes regarding Plaintiff's 2002 FOIA request fall into two basic categories. First, Plaintiff argues that Defendant's search itself was inadequate. Second, Plaintiff contends that Defendant improperly withheld certain information based on statutory exemptions. Each of these claims will be addressed in turn.

### A. Sufficiency of the Search

The purpose of FOIA is to "facilitate public access to Government documents" and "to pierce the veil of secrecy and to open agency action to the light of public scrutiny." McCutchen v. United States Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (internal quotations omitted). In responding to a FOIA request, an agency is under an obligation to conduct a reasonable search for responsive records. Oglesby, 920 F.2d at 68. To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351. An agency may demonstrate the reasonableness of its search by submitting "[a] reasonably detailed affidavit." Oglesby, 920 F.2d at 68.

First, Plaintiff argues that the FBI's search was not reasonable because it failed to locate one document, "which is dated September 18, 1995 and contains a San Francisco file number

of 149A-SF-106204-S-7575 (or 1575)." Pl.'s Mot. 8-9. Second, Plaintiff argues that "the FBI's use of April 2002 as the cut-off date for production of documents is unreasonable." Id. at 9-13.

### 1. Failure to Locate a Document

Plaintiff does not challenge the parameters of the search conducted by the FBI, which, of course, were based on this Court's September 24, 2009, Order. Instead, Plaintiff presents a document bearing his name, a date of September 18, 1995, and a San Francisco file number, which Plaintiff argues should have been uncovered by a reasonable search of the San Francisco Field Office files. Pl.'s Mot. 8-9. Plaintiff contends that "the very fact that this document exists and has not been produced in this case, despite fitting precisely within the FBI's own limitations to production, shows that either its search or production are unreasonable and do not meet the standards of FOIA." Id. at 9.

However, Defendant's affidavit provides a plausible, if somewhat speculative, explanation for the failure of a reasonable search to locate this document. David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI, explains that this record was found in a Sacramento file, but not a San Francisco file. Ninth Hardy Decl. ¶ 6, May 2, 2011 [Dkt. No. 117-4]. According to Hardy, the San Francisco file number does not appear to have originally been on the document, but rather was manually added using a stamp and hand-

written notation. Id. Hardy confirms that "[a]n original or copy of this document was not located during the search of the San Francisco 149A-SF-106204 file at issue in this case and a physical review (and later processing) of the 149A-SF-106204-S-1575 file serial did not locate this record." Id.

Hardy reasons that this file was found in Sacramento, but not in San Francisco, because the file contains a tip that came into the San Francisco Field Office's UNABOM tip line, which "would have been delegated to the Sacramento Field Office for action." Id. The San Francisco Field Office made its own determination "of which leads were significant enough to warrant placement in the San Francisco UNABOM investigative file." Id. Hence, according to Hardy, it is not surprising that this file would exist in Sacramento, but not in San Francisco, which was the object of Plaintiff's 2002 FOIA request. See Negley, 766 F. Supp. 2d at 195 (finding that Plaintiff's 2002 request was limited to documents held by the San Francisco field office).

Moreover, "adequacy of a search is not determined by its results, but by the method of the search itself." Saldana v. Fed. Bureau of Prisons, 715 F. Supp. 2d 24, 26 (D.D.C. 2010) (citing Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Indeed, "an agency's failure to find a particular document does not undermine the determination that the search was adequate" and "there could be several possible reasons

-11-

other than an inadequate search for why particular records are not located." Jefferson v. Bureau of Prisons, 578 F. Supp. 2d 55, 58 (D.D.C. 2008) (citing Wilbur v. Cent. Intelligence Agency, 355 F.3d 675, 678 (D.C. Cir. 2004)).

Plaintiff is therefore incorrect when he argues that "the very fact that this document exists and has not been produced in this case, despite fitting precisely within the FBI's own limitations to production, shows that either its search or production are unreasonable and do not meet the standards of FOIA." Pl.'s Mot. 9. Given the history of this litigation and the FBI's recalcitrance in complying with FOIA, Plaintiff's scepticism about the accuracy of Hardy's affidavit is very understandable. However, Plaintiff is challenging the failure to locate one document, and that is not sufficient to defeat summary judgment given the Court's finding in March, 2011, that the FBI has--finally--complied with the Court's September 24, 2009 Order specifying in great detail what kind of search the FBI was required to undertake.

### 2. April 2002 Cut-off Date

Plaintiff next argues that it was unreasonable for Defendant to deem only records created before April 2002 as responsive to his 2002 FOIA request. Pl.'s Mot. 9-13. This is now the third time Plaintiff has pressed this argument. Plaintiff originally argued that Defendant should be held in contempt for imposing such a temporal restriction in response to the Court's September 24, 2009,

-12-

Order, and, after losing that Motion, filed a Motion for Reconsideration of this same issue. In denying the Motion for Contempt, the Court held that "it was reasonable for the FBI to use a cut-off date of April 2002, when it was aware that it would also have to respond to Plaintiff's broader 2009 FOIA request." Negley, 766 F. Supp. 2d at 196.

As stated in the Court's accompanying Memorandum Opinion regarding Plaintiff' Motion for Reconsideration, Plaintiff has presented no reason for the Court to change its prior analysis. It is true, as Plaintiff himself states, "temporal limitations on FOIA productions are prohibited where the agency is unable to demonstrate that such cut-offs are reasonable under the circumstances." Pl.'s Mot. 10 (emphasis added). However, in this particular circumstance, the FBI responded to Plaintiff's 2002 request while also conducting searches in response to a subsequent, much broader request. Indeed, "following searches conducted in response to the June 14, 2009, FOIA/PA requests and the Court's September 24, 2009 Order, the FBI did not locate any responsive FBI investigatory records related to plaintiff that had not been previously released." Eighth Hardy Decl. ¶ 16. Simply put, Defendant's search and production in response to the 2002 request were reasonable under the specific circumstances of this case.

**B. Claimed Exemptions**

Plaintiff also objects to Defendant's withholding of certain information based on statutory exemptions. FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. United States Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. §§ 552(a), (b)). An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld. Vaughn v. Rosen, 484 F.2d 820, 827-28 D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

As with claims of inadequacy of the search, the court may award summary judgment as to withheld records solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit

Project, 656 F.2d at 738. As noted above, such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., 926 F.2d at 1200 (quoting Ground Saucer Watch, 692 F.2d at 771).

Specifically, Plaintiff protests Defendant's invocation of Exemption 7(C), which protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C).[6] The FBI has relied on

---

[6] Plaintiff has failed to contest the FBI's invocation of any exemption other than 7(C). Therefore, the Court may treat the Defendant's arguments concerning Exemptions 6 and 7(D) as conceded. Fischer v. United States Dep't of Justice, 723 F. Supp. 2d 104, 110 (D.D.C. 2010) ("It is proper to treat defendant's argument as conceded, with regard to the exemptions and categories not challenged by plaintiff.") (internal quotation omitted); Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

Similarly, Plaintiff has not opposed Defendant's argument that it has released all reasonably segregable portions of exempt records. Def.'s Mot. 34; see 5 U.S.C. § 552(b). The FBI's declarant has stated that the FBI has released 120 pages, including "66 pages in full and 54 pages in part." Seventh Hardy Decl. ¶ 4. The FBI did not withhold any pages in full. Id. Further, "[e]very effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material." Id. ¶ 47. In light of Plaintiff's failure to offer any opposition to Defendant's arguments and Defendant's affidavit
(continued...)

Exemption 7(C) to protect names and/or identifying information of: (1) FBI personnel; (2) individuals who furnished information to the FBI under an implied assurance of confidentiality; (3) State government employees or non-federal law enforcement officers; (4) third parties merely mentioned; (5) individuals interviewed by the FBI; and 6) third parties of investigative interest. Seventh Hardy Decl. ¶ 49. Defendant argues that "for each of these categories of information, the FBI explained in detail how disclosure of certain information pertaining to individuals could be reasonably expected to result in an invasion of personal privacy and worse still, could risk subjecting the named individuals to harassment, public embarrassment, and retaliation." Def.'s Mot. 25; Seventh Hardy Decl. ¶¶ 61-70. Plaintiff argues that "the FBI has not established the redactions are necessary to protect against an unwarranted invasion of privacy." Pl.'s Mot. 15.

In determining whether Exemption 7(C) applies, the Court must balance the public interest in disclosure with the privacy interests implicated by release of the material. Computer Prof'ls for Soc. Responsibility v. United States Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Suspects, witnesses, investigators, and third

---

⁶(...continued)
attesting to its efforts, the Court deems the issue conceded, and finds that the Defendant has fulfilled its responsibility to produce all reasonably segregable portions of exempt documents. Quick v. United States Dep't of Commerce, Nat. Inst. of Standards and Tech., 775 F. Supp. 2d 174, 179-80 (D.D.C. 2011) (treating segregability as conceded); Hopkins, 284 F. Supp. 2d at 25.

parties all have substantial privacy interests that are implicated by the public release of law enforcement investigative materials. Id.; Davis v. United States Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992). There is no disagreement that disclosure of these materials can lead to great embarrassment and reputational harm to these individuals. Safecard, 926 F.2d at 1205. Indeed, disclosure could, in some cases, lead to physical harm to the individuals and/or their families.

Moreover, it "is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Davis, 968 F.2d at 1282 (internal quotations omitted). Whether disclosure of private information is warranted under Exemption 7(C) turns upon whether the information "sheds light on an agency's performance of its statutory duties." Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 759, 773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989).

Thus, the requested information must shed light on the agency's own conduct and not merely on the subject matter of the underlying law enforcement investigation. Id. Our Court of Appeals has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity,

such information is exempt from disclosure."[7] Safecard, 926 F.2d at 1206.

Plaintiff points to several examples he believes illustrate the FBI's misuse of Exemption 7(C). Pl.'s Mot. 16-19. Plaintiff argues that each of the examples suffer from a common flaw, namely, that Defendant has failed to demonstrate for each one how removing the redaction would result in an unwarranted invasion of privacy. Finally, and most significantly, Plaintiff never identifies any public interest that would be served by disclosure.

In fact, for each example cited by Plaintiff, Defendant has specifically explained that it redacted the names or identifying information of either witnesses, third parties merely mentioned, individuals interviewed by the FBI, or individuals of investigative interest, and has described the relevant circumstances. Seventh Hardy Decl. ¶¶ 63, 65-70. All of these people have well established privacy interests implicated by release of identifying information. Computer Prof'ls, 72 F.3d at 904.

For these reasons, the Court concludes that the FBI properly invoked Exemption 7(C). Id.

---

[7] Plaintiff does not present any evidence, no less compelling evidence, that the FBI has engaged in illegal activity in this case.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **denied** and Defendant's Motion for Summary Judgment is **granted**.

August 31, 2011

/s/
Gladys Kessler
U.S. District Court Judge

<u>Copies to</u>: Attorneys of record via ECF.