UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES LUTCHER NEGLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 03-2126 (GK) |
| | : | |
| FEDERAL BUREAU OF INVESTIGATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Plaintiff James Lutcher Negley brings this Motion for an Award of Attorneys' Fees and Costs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E) [Dkt. No. 92]. The Government has filed an Opposition [Dkt. No. 98], Plaintiff has filed a Reply [Dkt. No. 99] and a Notice of Supplemental Filing in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Costs [Dkt. No. 100], and Defendant has filed an Opposition to Plaintiff's Notice [Dkt. No. 101]. The last two filings related to Plaintiff's request for an additional fee award for time spent on work related to the underlying Motion for an Award of Attorneys' Fees and Costs. Upon consideration of Plaintiff's Motion and Notice of Supplemental Filing, the Government's Oppositions, the applicable case law, and the entire record in this case, Plaintiff's Motion and Notice of Supplemental Filing are **granted**.

## I. BACKGROUND

This case concerns a FOIA dispute between Negley and the FBI, which commenced over nine years ago. This Court's September 24, 2009, Memorandum Opinion, Negley v. FBI, 658 F. Supp. 2d 50, 53-55 (D.D.C. 2009) ("2009 Opinion"), contains a detailed recitation of the case's lengthy

procedural and substantive history. Since issuance of that Opinion, granting Plaintiff's Motion for Partial Summary Judgment, the Court has denied Plaintiff's Motion for Contempt [Dkt. No. 110], has denied Plaintiff's Motion for Reconsideration [Dkt. No. 125], and has granted Defendant's Motion for Summary Judgment [Dkt. No. 126].

To briefly summarize, Negley submitted a FOIA request on January 16, 2002, to the FBI's San Francisco Field Office ("SFFO") seeking "a copy of any records about [him] maintained at and by the FBI in [the San Francisco] Field Office." Negley, 658 F. Supp. 2d at 53. Thereafter, there was much litigation between the parties. On September 24, 2009, this Court granted Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Second Motion for Summary Judgment, finding that the FBI's search for responsive documents was inadequate and that its production of documents was insufficient. Id.

## II. ANALYSIS

Under 5 U.S.C. § 552(a)(4)(E), district courts "may assess against the United States reasonable attorneys' fees and other litigation costs reasonably incurred in any case under this section in which a complainant has substantially prevailed." Our Court of Appeals, in a number of different opinions, has directed the district court to first determine whether a FOIA plaintiff "has substantially prevailed" and is therefore "eligible" for attorneys' fees. Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524-25 (D.C. Cir. 2011); Davy v. Central Intelligence Agency, 550 F.3d 1155, 1158 (D.C. Cir. 2008).

Once the district court determines that a FOIA plaintiff has substantially prevailed, it must then, in the exercise of its discretion, determine whether that litigant is "entitled" to attorneys' fees. Davy, 550 F.3d at 1158. In making that decision, the Court must examine and weigh at least four

different factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. Id. at 1159; Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992). The Court will address, first, whether Negley is "eligible" for attorneys' fees, i.e., whether he substantially prevailed, and, second, if so, whether he is "entitled" to such an award based upon the four criteria just enumerated.

### A. Has Negley "Substantially Prevailed"?

In a refreshing burst of candor, the FBI concedes, albeit reluctantly, that Plaintiff has "prevailed" with regard to those provisions of the 2009 Opinion ordering the disclosure of File S-1575; searches of the ICM database and the ECF database; the deposition of David Hardy (for the second time in this litigation) at the FBI's expense; searches of additional specific sources of potentially responsive documents; production, within 90 days, of all responsive documents along with a related Vaughn Index; and submission, within 90 days, of a detailed affidavit explaining the searches conducted and the bases for any redaction and/or withholdings (including permission for Negley to depose the affiant). See Order 2-4, Sept. 24, 2009 [Dkt. No. 90]; Def.'s Opp'n 6-9 . In addition to prevailing on these issues in September 2009, Plaintiff prevailed, on January 8, 2007, when the Court ordered the FBI to produce Serial 3041 in its entirety [Dkt. No. 43]; in doing so, the FBI also produced responsive documents from Serial 3865, as well as additional documents that it located during a "hand search" which had not been conducted previously. Negley, 658 F. Supp. 2d at 54. As the Court stated in its 2009 Opinion, "[t]his extremely tardy disclosure has never been explained." Id. at 59.

In short, it is clear that the Plaintiff has "substantially prevailed" in obtaining most of the documents responsive to his January 16, 2002, request.[1]

**B.      Is Negley Entitled, Under the Applicable Case Law, to an Award of Attorneys' Fees?**

In Davy, the Court of Appeals reaffirmed that "'[t]he touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA.  A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent.'" 550 F.3d at 1158 (quoting Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 715 (D.C. Cir. 1977)).

The Court emphasized that the statutory provision for attorneys' fees was not enacted to reward a litigant who successfully obtained disclosure of information that the Government wished to withhold, but "instead 'had a more limited purpose -- to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'" Davy, 550 F.3d at 1158 (quoting Nationwide Bldg. Maint.,

---

[1] In its Opposition, the Government argued that because it had not yet completed its Court-ordered search of the other potential sources of information, the Plaintiff's Motion for an Award of Attorneys' Fees and Costs was premature.  Def.'s Opp'n 7.  That argument is now moot. After the parties fully briefed the Motion for an Award of Attorneys' Fees and Costs, they also briefed cross-motions for summary judgment. On August 31, 2011, this Court granted Defendant's Motion for Summary Judgment and denied Plaintiff's Cross-Motion.  Negley v. FBI, ___ F. Supp. 2d___, 2011 WL 3836465, at *7 (D.D.C. Aug. 31, 2011).  Hence, an award of attorneys' fees to Plaintiff, who has substantially prevailed, is appropriate at this point, now that the FBI has, finally, complied with its FOIA obligations.

Inc., 559 F.2d at 711). With this guidance in mind, the Court will address the four criteria which must be evaluated in determining whether Negley is "entitled" to attorneys' fees.

### 1. The Public Benefit Derived From the Case

As noted above, the first factor to be assessed is "the public benefit derived from the case." Tax Analysts, 965 F.2d at 1093. In Davy, the Court of Appeals explained that this first factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." 550 F.3d at 1159.

A close parsing of that formulation of the first factor reveals that it contains two requirements, which are quite different from each other. First, there is the question of the potential public value of the information sought, and second, there is the very different question of the effect of the litigation for which fees are requested. Although our Court of Appeals has consistently emphasized the importance of examining the documents obtained as a result of the litigation in order to assess their potential public value, the meaning of the second question -- "the effect of the litigation" -- has not been substantively explored. See, e.g., Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

As to the potential public value of the information sought, the record is very clear that when Negley filed his request with the FBI in January of 2002, he was seeking only "a copy of any requests about [him] maintained at and by the FBI in [the San Francisco] Field Office." Negley, 658 F. Supp. 2d at 53. Somewhat later in this long search for documents, Plaintiff expanded his request to cover records about his company, as well as about him personally. See Negley, 2011 WL 3836465, at *2. Plaintiff fails to explain or offer any evidence that the documents he sought about himself and/or his company would in any way "'add to the fund of information that citizens may use in making vital

political choices.'"[2] Cotton, 63 F.3d at 1120 (quoting Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979)).[3] Not only has Plaintiff failed to demonstrate how the release of those documents which have been turned over to him would add to the fund of information that citizens may use in making their political choices, but he does not even discuss the nature of the documents that he has sought and received.

Instead, he focuses on the other requirement contained in the first factor to be considered, namely, "the effect of the litigation for which fees are requested." Davy, 550 F.3d at 1159. The two requirements of the first factor are, in actuality, very different from each other, as demonstrated by the facts of this case. On the one hand, the first requirement requires examination of whether there is public value to the information that Plaintiff seeks. On this record, the Court does not find any public value to the information disclosed about him and his company. On the other hand, Plaintiff focuses at great length, and with good reason, on the fact that this litigation has produced "extraordinary information regarding how the FBI maintains its records and the baseline method by which it will search for and respond to FOIA requests, unless a FOIA requester has information to demand otherwise." Pl.'s Mot. 10. He states that "[i]t is difficult to conceive of a FOIA case that could more clearly provide a 'public benefit.'" Id.

Plaintiff is correct that this litigation has provided extremely significant and useful information for ordinary citizens, as well as journalists and academics, seeking to find out "what

---

[2] The most that Negley can say is that he "anticipates" that the documents will show the Government's interest in his research in CIGS thin film photovoltaic cells, which research has enormous environmental and other benefit to the public. Such speculation will not suffice.

[3] The Court is well aware that the facts of Cotton are distinguishable from the facts presented in this case. However, that difference does not undermine the strength of the principles announced in Cotton.

their government is up to." U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 772-73 (1989) (internal quotations omitted). For the first time, the opinions in this case disclose information about numerous FBI databases which must be searched in order to achieve compliance with the agency's FOIA obligations. As Plaintiff points out, the FBI "routinely searches only one of those databases (the UNI), which in itself is flawed because the only method to search UNI is via index terms previously entered by an agent-clerk." Pl.'s Mot. 11.

The FBI does not deny that, as Plaintiff states in his Reply, there is no single federal court opinion, other than this Court's opinion of September 24, 2009, that even mentions, let alone discusses, the existence of either the Zy database or the SFFO card index. See Pl.'s Reply 7. Nor does the Government deny that even when federal court opinions have mentioned certain databases, such as ELSUR, ACS, and ICM, none of those opinions have discussed, as this case has, how those databases are indexed so that FOIA requesters can determine whether the FBI is effectively searching for documents which are responsive to their requests.

This information is indeed "valuable" for future FOIA requesters and litigants. The information will be particularly valuable, given the FBI's long history of recalcitrance and "grudging compliance" with FOIA. The enormous public benefit realized by disclosures of this information will "facilitate public access to government documents" and will help "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (internal quotations omitted).

Thus, we are faced with the troubling situation that the first factor which this Court must consider regarding Plaintiff's entitlement to attorneys' fees contains two requirements which produce, at least in this case, inconsistent results. To this Court's knowledge, and based on its

research, none of the FOIA attorneys' fees cases which have been decided, and there have been many, address this anomaly.

Because our Court of Appeals has consistently emphasized that the goal of FOIA is to open the Government to public scrutiny of its activities so that citizens can, ultimately, make informed political decisions, the Court concludes, in this particular case, that the fact that the information actually obtained under FOIA does not in and of itself provide a "public benefit" is far outweighed by the fact that the effect of this litigation is to give citizens better tools with which to obtain Government information and to monitor the Government's compliance with its FOIA obligations. See Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976) ("the basic purpose of the Freedom of Information Act [is] to open agency action to the light of public scrutiny.") (internal quotations omitted); Am. Civil Liberties Union v. U.S. Dep't of Justice, ___F.3d___, Nos. 10-5159, 10-5167, 2011 WL 3890837, at *3 (D.C. Cir. Sept. 6, 2011) (same); Washington Post Co. v. U.S. Dep't of Health and Human Servs., 690 F.2d 252, 264 (D.C. Cir. 1982) ("the purpose of FOIA is to permit the public to decide for itself whether government action is proper."). While the disclosures may not be in the traditional form of a document, the information made public in this case resulting from Negley's FOIA request and subsequent litigation, will enable citizens to more effectively and knowledgeably use FOIA to obtain information to which they are entitled.[4] Consequently, the Court

---

[4] In this sense, this case is distinguishable from Cotton, 63 F.3d 1115. In that case, the Court of Appeals determined that the precedential value of the district court's holding that the Smithsonian is an agency subject to FOIA was not the type of public benefit envisioned by the attorneys' fees entitlement analysis. Id. at 1120. In our case, the public benefit is not any legal precedent, but rather the information unearthed regarding how the FBI organizes and searches for information sought in FOIA requests.

concludes that the public has derived great benefit from the litigation of this case and that the first factor weighs strongly in favor of Negley's "entitlement" to payment of attorneys' fees.

### 2. & 3. The Commercial Benefit to the Plaintiff and the Nature of Plaintiff's Interest in the Records

As noted earlier, Plaintiff was seeking information about himself and his company. Obviously the nature of his interest in the records was purely commercial or personal. Tax Analysts, 965 F.2d at 1095 (to find for the defendant under the second and third prongs "any private interest will do."). The record does not indicate what, if any, benefit Plaintiff may have received from the material he obtained from the FBI. Consequently, given the sparseness of the record and the purely commercial and personal interest of the Plaintiff, factors two and three do not weigh in favor of awarding him attorneys' fees.

### 4. The Reasonableness of the Agency's Withholding of the Requested Documents

Under the fourth factor, the Court must assess "whether the agency 'had [] been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" Davy, 550 F.3d at 1162 (quoting LaSalle Extension Univ. v. FTC, 627 F.2d 481, 486 (D.C. Cir. 1980)). However, the Court of Appeals has also explained that the question is "whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." Davy, 550 F.3d at 1163. Further, "it is not necessary for the Court to find that the information the Government chose to withhold was in fact exempt. What is required is a showing that the Government had a reasonable basis in law for concluding that the information at issue was exempt and that it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Fenster, 617 F.2d at 744.

In this case, the Court has made ample findings demonstrating Defendant's failure to carry its burden of proving that it had a colorable or reasonable basis for refusing to disclose documents and conduct certain searches. Davy, 550 F.3d at 1163. For example, "Defendant's persistent and inexplicable refusal to search at least the dedicated Zy database does not demonstrate a 'good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested' . . . . To the contrary it actually reflects a distressing active disregard of its obligations under FOIA." Negley, 658 F. Supp. 2d at 58 (quoting Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). Further, "[t]he FBI's stubborn refusal to turn over [file S-1575] flies in the face of longstanding principles that favor disclosure in the FOIA context" and the FBI "has provided no explanation or justification for its piecemeal approach to identifying and producing documents in compliance with the Court's instructions." Negley, 658 F. Supp. 2d at 59. Finally, Defendant's affidavit describing its searches "plainly violates the rule set forth in Oglesby." Id. at 60.

In short, the Court has not changed its assessment of the FBI's conduct in this litigation contained in its Memorandum Opinion of August 31, 2011:

> It has taken almost 10 years for Mr. Negley to get the documents to which he is legally entitled under FOIA. The FBI has stonewalled, has delayed, has repeatedly "found" responsive documents long after it should have, and has on numerous occasions failed to meet its obligation under FOIA.

Negley, 2011 WL 3836465, at *1. The FBI's conduct "was exactly the kind of behavior the fee provision was enacted to combat." Davy, 550 F.3d at 1163. Therefore, the Court concludes that the fourth factor weighs in favor of awarding Plaintiff his attorneys' fees and costs.

5.     **Summary**

This case presents the difficult situation that the four factors point in opposite directions. Although it is true that Plaintiff is a requester who "seek[s] documents for private advantage" and therefore may not need a strong incentive to litigate, he has also provided a significant public benefit and has overcome recalcitrant and obdurate agency conduct. <u>Davy</u>, 550 F.3d 1160, 1163. Because "[n]o one factor is dispositive," because a "grudging application of this provision . . . would be clearly contrary to congressional intent," and because the attorneys' fees provision has the "limited purpose" of removing "the incentive for administrative resistance to disclosure requests based . . . on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation," the Court concludes that the factors weigh in favor of granting attorneys' fees in this instance. <u>Id.</u> at 1158-59 (internal quotations omitted). Therefore, Plaintiff's Motion for an Award of Attorneys' Fees is **granted**.

C.     **What is the Proper Amount of Attorneys' Fees?**

The Court will now turn to the amount of attorneys' fees and costs to which Plaintiff is entitled. The materials and calculations submitted by the parties are opaque at best. Therefore, the parties shall do the following.

1.     **Plaintiff's Submissions**[5]

a.     Plaintiff shall clearly set forth how many post-litigation hours he or the appropriate attorneys in his firm have spent on this case.

---

[5] Plaintiff submitted exhibits of great length to substantiate his claims. Many of the pages in the exhibits are difficult to read and many were difficult to understand. The Court does not intend to attempt to interpret these exhibits without some guidance. For that reason, the Court is requesting the specific information it needs and that information should be presented in the clearest fashion possible.

    b. Plaintiff shall then multiply those hours by the specific Laffey Matrix hourly rates relevant to each year in question.

    c. Plaintiff shall explain what his position is about the $30,000 amount which he claims to have deducted from the total amount of fees. Pl.'s Mot. 18.

    d. Plaintiff shall break down the court reporter/deposition costs indicating how much each deposition cost.

    e. Plaintiff shall explain the cost of $899.51 for document printing. Pl.'s Mot., Ex. D [Dkt. No. 92-6].

  **2.** **Defendant's Submissions**

    a. The Government shall explain its statement that the total amount invoiced by the three timekeepers for which Negley seeks fees is $198,854. Def.'s Opp'n 15.

    b. The Government shall explain its position about the $30,000 reduction, which it claims results in a total fee award of $175,546. Id. at 16.

    c. The Government shall explain its position that "a reasonable attorneys' fee would be 30 percent of the aggregate total of $175,546 in fees, as calculated using the United States Attorney's Office Matrix, or $52,663.80." Id. at 16 n.10.

    d. The Government shall provide a response, if it has any, to the paragraph in Plaintiff's Reply regarding the costs incurred by having depositions videotaped and deposition transcripts expedited. Pl.'s Reply 12.

  Parties should be aware that the Court will award attorneys' fees based upon the applicable Laffey Matrix rates for any given year. With that information in mind, the Court profoundly hopes that the parties will be able to resolve the attorneys' fees issue without further litigation.

3. **Plaintiff's Supplemental Request**

Plaintiff requests $24,506.50 for work related to the underlying Motion for an Award of Attorneys' Fees and Costs between October 1, 2009, and December 12, 2009. Plaintiff admits in his supplemental declaration, attached to his supplemental filing, that the firm is unable to generate the detailed type of report for hours spent on this case between December 5, 2009, and December 12, 2009, which he submitted for all other time periods. That amount, Plaintiff estimates, is approximately $6,500. The Government is correct that this representation is insufficient to satisfy Plaintiff's burden to establish the reasonableness and accuracy of any attorneys' fees requested. Consequently, the figure of $24,506.50 must be reduced by $6,500.

Second, Plaintiff has included in his request time spent on settlement discussions with Defendant. However, neither the Government nor the Court can figure out what portion of the request for fees was devoted to settlement discussions. Therefore, Plaintiff shall submit an explanation for the amount of time devoted to settlement discussions, and that amount of time, based on the applicable Laffey Matrix rates, shall be deducted from the $18,006.50.

Third, even though all the figures are not crystal clear, it appears that Plaintiff has billed a total of 73.3 hours, which must be reduced by the time spent on settlement discussions. While the Court recognizes that researching and reviewing time sheets and invoices over a period of more than six years can be lengthy, not to say tedious, a total of approximately 70 hours (or perhaps a little less) spent on preparing a motion for attorneys' fees is simply excessive and therefore unreasonable. Indeed, such a number of hours would reflect billable time of at least two solid weeks spent on the fee request. The Court deems a 20% reduction in the final figures to be appropriate.

At this time, it will not be possible to make a final award of attorneys' fees for preparation of the fee petition. That will be done shortly after receipt of the necessary information from Plaintiff.


October 11, 2011                          /s/
                                          Gladys Kessler
                                          United States District Judge


**Copies to: attorneys on record via ECF**